STURM, Respondent, vs. SIMPSON'S GARMENT COMPANY, Appellant.

*December 9, 1955—January 10, 1956.*

588

For the appellant there was a brief by *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *Oscar T. Toebaas.*

For the respondent there was a brief by *Spohn, Ross, Stevens, Lamb & Pick,* attorneys, and *Frank A. Ross, Jr.,* of counsel, all of Madison, and oral argument by *Frank A. Ross, Jr.*

CURRIE, J.    The principal contention raised in behalf of the appellant Simpson's on this appeal is that the evidence does not support the verdict and judgment.

It is not unusual in cases of this kind for the evidence to be in sharp conflict on certain points, and such proved to be the case in the course of the instant trial. However, in passing upon the issue of whether the evidence supports the verdict it is only necessary to consider such testimony and exhibits which sustain the verdict. *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, 63 N. W. (2d) 740, and *Heibel v. Voth* (1955), ante, p. 350, 73 N. W. (2d) 421. Therefore, in stating the facts herein we have confined the same to the evidence which does tend to support the verdict, deeming it to be unnecessary to set forth testimony adduced on behalf of Simpson's which conflicted therewith. In instances of such conflict the credibility of the witnesses clearly lay within the sole province of the jury.

At the time of the accident Simpson's conducted a ladies' ready-to-wear retail store in the ground floor of a three-story building fronting on North Pinckney street opposite Capitol Square in the city of Madison. There was a recessed entranceway situated between the public sidewalk in front of the building and the doorways used by customers to enter the store. In the center of the recessed front building wall of the ground story were double doors opening

upon a flight of stairs leading to the second story. On each side of these double doors was a single door leading into Simpson's store. The portion of the entranceway floor directly in front of the double doors opening upon the stairway was raised above the remainder of such floor. Such raised portion is described in the testimony as a "platform."

Such platform was 63 inches long and 60 inches wide, and approximately five and one-half inches high at its south side and eight and one-fourth inches at its north side. It had a slope toward the street of one inch in each 24 inches. This platform was made of concrete and all of its top surface, except for a troweled concrete edge about six inches wide, consisted of an inset of porcelain ceramic tile which was very slippery when wet. The remaining floor of the entranceway also was surfaced with this tile.

The plaintiff is a widow who was sixty-four years of age when the accident occurred on December 15, 1953. At about eleven o'clock in the morning of that day she approached Simpson's store from the south, intending to enter the store in order to pay a bill she owed. Because there were people standing in the recessed entranceway barring her access to the south door to the store, she stepped onto the platform and was walking across it on her way to the north store door when she slipped and fell, thereby severely injuring herself. A light snow had fallen that morning and some of it had apparently been carried by air currents into this entranceway so that the platform surface was slightly coated with snow. Such coating was so slight that one could see the tile beneath. The temperature at the time of the accident was 17 degrees above zero. In addition to this light coating of snow the top surface of the platform was wet and slippery.

It was customary for Simpson's during the winter season, which in our Wisconsin climate commences in November, to cover the top surface of the platform with a rubber mat,

and two additional mats were provided for the remaining floor of the entranceway. None of such mats was in place at the time of the accident. The mats served the dual purpose of protecting the carpeted floors of the store from having snow and mud tracked in by customers, and of preventing persons from slipping on the entranceway floor and platform surface. Mrs. Tiffany, one of Simpson's employees, had come to work between half past eight and nine o'clock on the morning of the accident, and, because the tile floor of the entranceway was wet, she slipped but did not fall. She then contacted the executive manager of the store and advised him that the rubber mats should be placed out in the entranceway, and he replied to the effect that the matter would be taken care of immediately, but this was not done.

We thus have a situation where the tile surface of the platform was wet and slippery, the defendant store had a rubber mat available for the purpose of protecting invitees against slipping on such surface, such defendant had actual notice of this slippery condition and that the mat was not in place, and the defendant after receiving such notice failed to put out the mat. The crux of this appeal boils down to whether these facts present a jury issue on the question of Simpson's negligence, or whether it must be ruled that such defendant was not negligent as a matter of law. If the claimed negligence of this defendant presents an issue of fact for the jury to determine, there unquestionably was credible evidence to sustain the jury's answer of "Yes" to the third question of the special verdict.

This is a case of first impression in this court, but the New York courts have been confronted with the question at issue here in at least four cases, and in all four cases have held that the failure of one in control or possession of a building to have an available mat in place, to protect invitees from slipping on a slippery surface, presents an issue of fact for the jury to determine whether such failure constitutes

negligence. *Thompson v. Palladino* (1937), 250 App. Div. 817, 294 N. Y. Supp. 461, affirmed without opinion, 275 N. Y. 633, 11 N. E. (2d) 792; *Gluck v. Sunapee Realty Corp.* (1939), 257 App. Div. 658, 15 N. Y. Supp. (2d) 99; *Lefkowitz v. 144 West Corp.* (1950), 277 App. Div. 1143, 101 N. Y. Supp. (2d) 306; and *Pignatelli v. Gimbel Bros.* (1955), 285 App. Div. 625, 140 N. Y. Supp. (2d) 23.

We believe it to be unnecessary to discuss each of such four cases, but deem it will suffice to give a brief synopsis of the facts and holding in *Lefkowitz v. 144 West Corp., supra,* which is illustrative of the other three. The vestibule leading from the front door of defendant's apartment building to the elevator had a terrazzo floor which was slippery when wet. On the day of the accident such floor was wet from rain tracked in from the outside, which condition had existed for at least an hour prior to the accident. Defendant's employees had failed to comply with defendant's directions to put a rubber mat and runner in place which was available for such purpose. The plaintiff wife was injured as a result of slipping on the wet vestibule floor as she entered through the front door from the outside. The trial court dismissed the complaint but the appellate division (New York's intermediate appellate court) held that this was error because such facts established a *prima facie* case of defendant's negligence, and remanded the case for a new trial.

While the building in *Lefkowitz v. 144 West Corp., supra,* was an apartment house, the most recent New York case, that of *Pignatelli v. Gimbel Bros., supra,* involved injury to an invitee of a retail store, as in the instant case.

The owner or occupant of a building, in which a business is conducted of such a nature that an implied invitation is extended to the general public to enter such premises, owes to such invitees the duty to exercise ordinary care. 38 Am. Jur., Negligence, p. 754, sec. 96. In *Hamus v. Weber,*

(1929), 199 Wis. 320, 324, 226 N. W. 392, this court stated:

". . . one fails to use ordinary care when he does an act *or omits a precaution when from the circumstances he ought reasonably to foresee* as an ordinary intelligent and prudent person *that such* act or *omission may probably cause injury to another.*" (Emphasis supplied.)

It seems to us that the failure on the part of the owners or occupants of the buildings involved in the four cited New York cases, and of Simpson's in the instant case, to put available mats in place clearly presented a jury issue as to whether such omission constituted a failure to exercise ordinary care. We cannot hold as a matter of law that Simpson's did not fail to exercise ordinary care with respect to its invitees such as the plaintiff.

The principal authority relied upon by appellant's counsel in urging this court to adopt the opposite conclusion is *Bersch v. Holton Street State Bank* (1945), 247 Wis. 261, 19 N. W. (2d) 175. In that case the plaintiff was injured as a result of slipping and falling on the floor of defendant's bank, he having entered the bank to make a deposit. It was snowing outdoors and customers had tracked snow into the bank and onto the floor, making such floor wet and slippery. This condition had been going on since nine o'clock of the morning of the day of the accident, which had occurred shortly after noon, and the bank had knowledge thereof. This court, in its opinion, stated (p. 262):

"If the defendant were held to the duty of mopping up the floor and keeping it free from snow and water, it would require perpetual attention because there would be a continual deposit of moisture upon the floor."

The *ratio decidendi* of the decision was that it would be imposing too much of a burden on the bank, if it were held that it had to resort to such continual mopping all through

the business day, and, therefore, no such duty existed. In its opinion in the *Holton Street State Bank Case* the court also cited the general rule laid down in *Schroeder v. Great Atlantic & Pacific Tea Co.* (1936), 220 Wis. 642, 648, 265 N. W. 559, that one who keeps a store or shop "is bound to exercise reasonable care to keep it in a safe condition for his customers and others whom he invites, expressly or impliedly, to enter on business with him." If the evidence in the *Holton Street State Bank Case* had disclosed that the bank had rubber mats available to place on its floor when they became wet to prevent customers slipping and falling, and the bank, after notice of the wet and slippery floor on the day of the accident, had neglected to have such mats put in place, we would then have a fact situation paralleling the instant case. In such a situation it would seem absurd to hold that it would have imposed too burdensome a duty upon the bank to have been required to put such available mats in place.

Counsel for Simpson's advance the further contention that this court should hold, as a matter of law, that the contributory negligence of the plaintiff exceeded that of Simpson's. It is only in rare instances that this court has disturbed a jury's apportionment of negligence under our comparative-negligence statute (sec. 331.045). We consider that under the facts of this case the comparison of negligence was peculiarly for the jury.

Up to this point we have been discussing the question of Simpson's liability from the standpoint of common-law negligence and not the safe-place statute because the jury answered question 1 of the special verdict, which was framed to cover the question of possible violation of such statute, in favor of Simpson's. Counsel for Simpson's argue that the jury's answers to questions 3 and 4 of the verdict are contrary to such answer to question 1. If counsel are right in this contention, we would be faced with an inconsistent ver-

dict and the relief to which Simpson's would be entitled would consist of a new trial, and not the dismissal of the action as requested in appellant's brief.

We must consider the first question of the verdict, and the jury's answer thereto, in the light of the limitation the trial court placed thereon by the following instruction given the jury with respect to such question:

"Defendant's only duty was to provide a *structure* or step that was as safe as the use to which it was put would reasonably permit, and defendant Simpson's Garment Company was under no duty to guard against natural fall of snow or ordinary accumulations of water from natural causes on the surface of the exterior walks or platforms of the building." (Emphasis supplied.)

Because of this instruction the jury could reasonably have arrived at the conclusion that such question was required to be answered as the jury did on either of the following two hypotheses: (1) That in order to answer "Yes" to such question the plaintiff would have had to prove that there was a defect in the construction of the platform as a "structure" which in the opinion of the jury she had failed to do; or (2) that because the tile surface of the platform had been made slippery by the snow upon it the answer "No" was required.

The instruction was erroneous in both respects because the entranceway where plaintiff fell constituted a place of employment under the safe-place statute. While temporary conditions wholly disassociated from the structure of a building do not constitute a violation of the safe-place statute by the owner of a public building they may constitute a violation of such statute if permitted by an employer in a place of employment. *Jaeger v. Evangelical Lutheran Holy Ghost Congregation* (1935), 219 Wis. 209, 212, 262 N. W. 585. Furthermore, in *Cross v. Leuenberger* (1954), 267 Wis. 232, 65 N. W. (2d) 35, 66 N. W. (2d) 168, we held

that the rendering unsafe of a place of employment due to a natural accumulation of snow and ice might be the basis of holding an employer liable under the safe-place statute.

Such erroneous instruction fully explains why the jury could consistently answer question 1 "No" and questions 3 and 4 "Yes." While erroneous, such instruction was only prejudicial as to the plaintiff and not Simpson's.

*By the Court.*—Judgment affirmed.