Rossow and wife, Respondents, v. LATHROP and another, Appellants.

*September 4—October 1, 1963.*

For the appellants there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *Edward E. Omernik*.

For the respondents there was a brief by *Cameron, Cameron, Shervey & Weisel* of Rice Lake, and oral argument by *Robert O. Weisel*.

CURRIE, J. These issues are presented by this appeal:

(1) Was the causal negligence of the deceased, Dennis Rossow, as a matter of law equal to the negligence attributed to defendant Lathrop?

(2) Should a new trial be granted because of the trial court's instructions to the jury with respect to crosswalks and right-of-way?

*Comparative Negligence.*

In order to properly resolve the first issue with respect to the comparative negligence of Dennis and Lathrop it is necessary to recount the evidence bearing upon the occurrence of the fatal accident.

On June 23, 1962, Dennis was nine years, eight months, and thirteen days old, was four and one-half feet tall and in good health. The Rossow farm home is located on the west side of County Highway W, while the barn is located on the east side of such highway. This highway has a blacktop paving. Highway W as it passes the farm buildings runs in a general north-south direction and continues in such course for a considerable distance to the south. A private driveway extends from the house to the barn crossing Highway W at approximately right angles. Commencing at about the north edge of this private driveway Highway W makes a sweeping curve to the northwest. Beyond this curve it proceeds in a westerly direction. Also commencing at the north edge of the private driveway is a town dirt road extending in a north-

erly direction. The junction of this town road with Highway W forms roughly a Y intersection.

June 23, 1962, was a fine, clear day. Plaintiff Richard Rossow, father of Dennis, on the afternoon of that day was engaged in hauling baled hay with a tractor and wagon from the hayfield to the barn. The accident occurred at about 4 p. m. Just prior to the accident a load of baled hay had been brought to the south end of the barn, about opposite the private driveway, where the bales of hay were being loaded on a mechanical elevator and carried up into the barn. Dennis and Mrs. Hunter, an aunt by marriage to Dennis' parents, were doing the unloading. Richard Rossow unhitched the tractor from the wagonload of hay and attached it to an empty wagon with a 14-foot hayrack, intending to return to the field for another load. His route to the hayfield would take him out the private driveway and then after making a right-angle turn, north on the town dirt road. As the father was about to drive away, Dennis stated that he was going to the house to see his grandmother who had arrived that day to visit the family.

At this time defendant Lathrop was driving his mother's Rambler automobile on Highway W from Falun to Frederic where he and his passengers intended to play golf. Lathrop was eighteen years of age. There were four passengers in the car, ages twelve to twenty-five, all of whom were male companions of the defendant Lathrop. The twenty-five-year-old passenger was seated in the right front seat, while the others were seated in the rear. The Rambler was somewhere on the curve portion of Highway W, to the northwest of the private driveway, at the time the tractor and wagon pulled out of the private driveway and made the right-angle turn to the north to proceed onto the town road. For the purposes of this appeal we will assume that the Rambler struck Dennis after he had entered upon the blacktop pavement while crossing from east to west at the point where the private driveway

crosses such highway. The testimony of the persons in the Lathrop car, plus the blood spot found in the center of Highway W at the point where the private driveway crosses the same, establishes this to be a fact. The only conflicting evidence on this point was given by Vickie Rossow, Dennis' sister, who at time of trial in September, 1962, was nine years of age. At the time of the accident she was standing in front of the house facing Highway W. In her direct testimony she stated that Dennis was standing just off the east side of the pavement of Highway W when struck; but on cross-examination she testified he was crossing Highway W when struck.

There was a sharp conflict in the evidence as to whether Dennis suddenly dashed out behind the wagon drawn by the tractor into the path of the Rambler, giving Lathrop no opportunity to avoid the accident, or whether the wagon had proceeded up the dirt road a sufficient distance so that the wagon no longer obstructed Lathrop's view at the time Dennis first came into view. There is a further sharp dispute in the evidence as to the speed at which the Lathrop car was traveling at the time of the accident. Lathrop and his passengers estimated the speed from 35 to 40 miles per hour. Richard Rossow estimated the speed from 50 to 60 miles per hour; while Mrs. Hunter estimated it at 50 miles per hour or faster.

Dennis' death apparently was instantaneous. His body was found after the accident about three and one-half feet east of the east edge of the pavement of Highway W, face down, and 39 feet south of the previously mentioned spot of blood on the highway. Lathrop testified at the trial that he first saw the tractor pull out of the driveway when he was 250 to 300 feet away, and that he got a glimpse of the boy just a split second before hitting him. He further testified that he started to apply his brakes, but before he pressed his foot on the brake he realized it was useless and again raised

his foot. There were no skid marks on the pavement indicating that the brakes had been suddenly applied. The car proceeded down the highway approximately 700 feet before coming to a stop. The car was then backed up and a conversation took place between Lathrop and Richard Rossow. The latter testified that Lathrop said, "I didn't see your boy. I didn't know I hit anything." Mrs. Rossow corroborated her husband in this statement. Bruce Johnson, the oldest of the three rear-seat passengers in the Rambler, testified that just at the time of the accident he saw a flash of something in the road and then heard a thud, after which Clifton Richards, the front seat passenger, shouted to Lathrop, "Stop, stop, you hit something," after which Lathrop brought his car to a stop.

In viewing the jury's answer to the comparative-negligence question we must accept the version of the credible evidence which sustains the verdict. *Sturm v. Simpson's Garment Co.* (1956), 271 Wis. 587, 590, 74 N. W. (2d) 137. Upon the evidence before it the jury could reasonably conclude that Lathrop did not see Dennis before striking him and that the wagon was a sufficient distance to the north of the point of impact as to render Lathrop's negligent lookout causal. It would be difficult to see how the jury could have done otherwise than it did in finding Dennis causally negligent in not having seen the Rambler in time to take some precaution for his own safety. Even though Lathrop had the right-of-way, this additional factor does not require an apportionment of at least 50 percent of the negligence to Dennis.

The degree of care required of a child depends upon his age, capacity, discretion, knowledge, and experience. A child of tender years is not held to the same degree of care as an adult. *Hanson v. Binder* (1952), 260 Wis. 464, 467, 50 N. W. (2d) 676, and *Brice v. Milwaukee Automobile Ins. Co.* (1956), 272 Wis. 520, 525, 76 N. W. (2d) 337.

Neither is a nine-year-old ordinarily held to the same degree of care as an eighteen-year-old. Even when not confronted with the youth of one of the actors the issue of comparative negligence peculiarly lies within the province of the jury to determine. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 489, 107 N. W. (2d) 458, and *Jankovich v. Arens* (1952), 262 Wis. 210, 214, 54 N. W. (2d) 909. However, where, as here, one of the actors is less than ten years old a court is particularly reluctant to interfere with the jury's attributing more negligence to the older actor.

In view of the foregoing we have no hesitation in holding that this is not a proper case in which to upset the jury's comparison of negligence.

### *Instructions to the Jury.*

Question 1 of the special verdict read, "Just before the accident, was the defendant, Loren Lathrop, negligent in the operation of his automobile?" Question 3 of the verdict read, "Just before the accident, was Dennis Rossow negligent for his own safety?"

Defendants contend that the jury, in answering the foregoing questions, was misled by the trial court's instructions on right-of-way and crosswalks. The pertinent portions of the instructions bearing on right-of-way and crosswalks are as follows:

"When a pedestrian crosses at a place other than a crosswalk, it is his duty to maintain such a lookout as in reasonably necessary to enable him to yield the right of way to motor vehicles approaching his line of travel, since they have the right of way over him.

" . . .

"Now, you have heard quite a bit of talk in this testimony about 'crosswalks,' and 'intersections,' and so forth.

" . . .

"Now, you have heard the word 'crosswalk.' In the absence of lines or markings on the highway, a crosswalk—that is, some crosswalks are marked like you see in towns. Out

in the country, of course, they are not. In the absence of lines or markings, that part of a roadway, at an intersection, which is included within the transverse lines which would be formed on such roadway by connection and corresponding lateral lines of the sidewalks on opposite sides of such roadway, or, in the absence of a corresponding sidewalk on one side of the roadway, that part of such roadway which is included within the extension of the lateral lines of the existing sidewalk across such roadway at right angles to the center line thereof, except in no case does an unmarked crosswalk include any part of the intersection.

"Now, we have special statutes which deal with the duties of people at crosswalks. In Question 1 and 3, this question of the crosswalks are included. All of these matters I am instructing you on have to do with whether the deceased, Dennis Rossow, or the defendant, Loren Lathrop, were negligent, or whether either one of them or both of them were.

"You are instructed that in connection with Questions 1 and 3, that the Wisconsin Statutes define the right of way as the privilege of the immediate use of the roadway.

"The statute having to do with right of way at intersections provides that at an intersection or crosswalk where traffic is not controlled by traffic control signals or by a traffic control officer, the operator of a vehicle shall yield the right of way to a pedestrian who is crossing the highway within a marked or unmarked crosswalk.

"*If you find that the pedestrian was crossing the highway within a marked or unmarked crosswalk, then it became the duty of the operator of the automobile to yield the right of way to him.*" (Emphasis supplied.)

The trial court was in error in telling the jury that they had heard "quite a bit of talk in this testimony about 'crosswalks.'" Nowhere in the testimony is to be found any mention of crosswalks. However, the most-damaging portion of the quoted instructions from defendant's standpoint is the italicized last paragraph. This conveys to the jury that the evidence would at least permit the jury to find that Dennis was crossing at an unmarked crosswalk when he attempted to cross within the lines of the private driveway leading from

the house to the barn, and, therefore, was entitled to the right-of-way over Lathrop. We deem this is the likely effect of this instruction even though the previous instruction defining marked and unmarked crosswalks was couched in terms of the statutory definitions found in sec. 340.01 (10). The statutory definition of an unmarked crosswalk is rather technical and, where, as in this instance, the jury hears such definition only once, the necessity of there being an extension of sidewalk lines, might well have escaped the jury's notice or recollection. This is especially true where, as here, there was no testimony whatever about crosswalks or sidewalks.

In the instant case, where it is a verity that Dennis did not attempt to cross Highway W at either a marked or unmarked crosswalk, the only instruction which should have been given on right-of-way should have been grounded on sec. 346.25, Stats.[1] Furthermore, if in giving such instruction the terms "crosswalk" or "unmarked crosswalks" were used by the court, the jury should have been further instructed that under the undisputed evidence there was no marked or unmarked crosswalk present. Preferably, the use of these terms "crosswalk" and "unmarked crosswalk" could be avoided by simply instructing that, if the jury should find that Dennis was in the act of crossing Highway W when struck by defendant Lathrop's automobile, it was Dennis' duty to yield the right-of-way to such automobile.

However, the fact that the instruction as given was probably confusing and misleading, should not result in a new trial unless this court is convinced that it probably affected the jury's verdict. Our review of the entire evidence leads us to conclude that it probably did affect the jury's answer to the comparative-negligence question. In reaching this conclusion

[1] Sec. 346.25, Stats., provides, "Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to all vehicles upon the roadway."

we are not persuaded by plaintiffs' argument that the jury, in apportioning 10 percent of the aggregate negligence to Dennis, did find that he violated the right-of-way existing in Lathrop's favor. The trial court properly instructed the jury, in a portion of the charge not quoted above, as follows:

"A pedestrian crossing a street or highway must exercise ordinary care to keep a careful lookout as he enters and proceeds to cross to enable him to become timely aware of the presence and location of oncoming traffic. The exercise of ordinary care by such a pedestrian requires him to observe timely the presence, location, and movement of motor vehicles that may be approaching his course of travel."

The 10 percent negligence which the jury apportioned to Dennis in all likelihood was grounded on the jury's finding that Dennis did not comply with this duty of exercising a proper lookout which was covered by this last-quoted portion of the charge.

We conclude that we should exercise our discretion under sec. 251.09, Stats., and grant a new trial in the interest of justice. We so ground the new trial because the criticized instructions contain no actual misstatement of law although we feel that their net effect probably was to confuse and mislead the jury.

Defendants have raised no claim in this court that the damages are excessive, and they appear to this court to be reasonable. We, therefore, limit the new trial to the negligence issues only.

*By the Court.*—Judgment reversed, and cause remanded for a new trial confined to the negligence issues only.

GORDON, J. (*dissenting*). I respectfully dissent. The trial judge informed the jury that, "*If you find* that the pedestrian was crossing the highway within a marked or unmarked crosswalk, then it became the duty of the operator of the automobile to yield the right of way to him." (Em-

phasis added.) This was an instruction conditioned on the jury's finding a crosswalk, and in that sense it was superfluous under the facts which were before the jury.

In my opinion, such error as occurred in the judge's instructions is not of sufficient moment as to require a new trial. The majority of the court deems that the judge's reference to crosswalks prejudicially tainted the entire proceedings; this is the point on which I disagree. My examination of this record persuades me that the trial was a fair one, the result was reasonable, and the error in the judge's instruction was innocuous.

Mr. Justice DIETERICH joins in this dissent.