DE MARCO, Appellant, v. BRAUND, Respondent.

*April 13—May 10, 1966.*

For the appellant there were briefs by *La France, Thompson, Greenquist, Evans & Dye* and *Kenneth L. Greenquist* and *Adrian P. Schoone,* all of Racine, and oral argument by *Kenneth L. Greenquist.*

For the respondent there was a brief by *Helm, Myers, Gillett & Christensen* of Racine, and oral argument by *Einer Christensen.*

WILKIE, J. The single issue presented here, which is dispositive of the appeal, is: Is there any credible evidence to support the jury's finding that the respondent was not negligent with respect to furnishing or main-

taining a place of employment for his employees and frequenters as safe as the nature of the place would reasonably permit?

Whether or not a place is safe within the meaning of the statute depends on the facts and circumstances of the particular case.[1] And whether or not there has been compliance with the safe-place statute is generally a question for the jury.[2] A jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings,[3] particularly where the verdict has the blessing of the trial court.[4] Evidence is to be viewed in the light most favorable to the verdict.[5]

Respondent's repair shop was located on Ninth street in Racine. The floor of the shop was of steel-troweled concrete and was covered with a nonabrasive sealer which had been applied one month earlier. In the front of the building, which faces south, were two large overhead doors and a pedestrian entrance. There was a drain in the floor of the shop at a point about 15 feet in from the west overhead door. The floor sloped slightly from the door to the drain. Automobiles were washed in this area of the shop.

[1] *Paaske v. Perfex Corp.* (1964), 24 Wis. (2d) 485, 489, 129 N. W. (2d) 198; *Zernia v. Capitol Court Corp.* (1963), 21 Wis. (2d) 164, 168, 124 N. W. (2d) 86, 125 N. W. (2d) 705; *Zehren v. F. W. Woolworth Co.* (1960), 11 Wis. (2d) 539, 543, 105 N. W. (2d) 563.

[2] *Anderson v. Joint School Dist.* (1964), 24 Wis. (2d) 580, 585, 129 N. W. (2d) 545, 130 N. W. (2d) 105; *Raim v. Ventura* (1962), 16 Wis. (2d) 67, 71, 113 N. W. (2d) 827; *Zehren v. F. W. Woolworth Co., supra,* footnote 1, at page 544.

[3] *Anderson v. Joint School Dist., supra,* footnote 2, at page 584; *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 290, 128 N. W. (2d) 400.

[4] *Cheetham v. Piggly Wiggly Madison Co., supra,* footnote 3, at page 290.

[5] *Zernia v. Capitol Court Corp., supra,* footnote 1; *Sturm v. Simpson's Garment Co.* (1956), 271 Wis. 587, 74 N. W. (2d) 137.

Appellant drove to respondent's shop on July 13, 1963, to pay a bill and to have a bicycle frame straightened. He arrived at approximately 10:15 a. m., and parked the car in front of the shop. It was raining hard at the time and water was being blown through the overhead doors and into the building for a distance of two or three feet. Appellant removed the frame from the trunk and entered the shop through the west overhead door. He fell at a point about three feet inside. Appellant testified that he had walked briskly from the car into the shop, but three witnesses who were inside the shop claimed that he was running. These witnesses and respondent, who was summoned to the scene, agreed that the cement floor was damp just inside the door but that no puddles were present. Although he did not specifically describe the condition of the floor prior to his entry, appellant remembered that he ended up lying in a puddle after he fell. A car, which was straddling the drain just inside the west door, was being washed at the time appellant fell.

Appellant's expert witness, Roger Kirchhoff, who was retired from his position as the state of Wisconsin architect, testified in substance that due to the "steel troweling" the concrete floor in respondent's shop was as smooth as concrete can be, that a sealer would make the floor even smoother, and that the addition of water on any smooth surface would cause the surface to be even smoother or slipperier. It was his opinion that the garage floor was not as safe as its nature would reasonably permit for the reason that:

". . . this condition that you described, steel troweled finish with a sealer and a film of water was slipperier than it should have been, and it could have been made non-slip."

He felt that the floor could have been made safer by (1) removing the sealer, (2) adding abrasive strips, (3) keeping it free of water, or (4) using the "brush trowel"

technique instead of the "steel trowel" technique when the concrete was originally poured. However, Kirchhoff did acknowledge that (1) the application of the sealer promoted safety by preventing grease from seeping into the pores, (2) he would not recommend "brooming" of concrete in areas used by automobiles because the concrete would "become a grease trap," (3) most garages in the state have "steel troweled" floors, and (4) sealers are frequently used in garages.

Respondent called as a witness, Elbert S. McLoud, who was retired and had been the basic research director for the Johnson Wax Company. McLoud testified that there was a safety factor in using the sealer because it would prevent dirt particles from becoming imbedded in and grease from adhering to the concrete. He was of the opinion that the floor in respondent's shop was reasonably safe, and added, in effect, that the shop floor was safer, insofar as slipping was concerned, than the courtroom floor or an ordinary varnished floor in a home. On cross-examination he opined that there was "no substantial sacrifice in safety" when a sealer is applied but continued that the floor then would be "significantly more hazardous when wet." On redirect examination, McLoud explained that "[t]here would be a modest, and only modest, not a substantial change in the hazard" if concrete treated with sealer—as opposed to nontreated concrete—became wet.

The gist of appellant's position is that the evidence conclusively establishes in two respects that the floor was rendered unsafe by the presence of water.

First, relying on Kirchhoff's unequivocal statement that the floor was not as safe as its nature would reasonably permit and McLoud's testimony on cross-examination that the floor is "significantly more hazardous when wet," he maintains that the experts were in agreement as to the unsafeness of the floor and that therefore the jury was bound by these undisputed and uncontradicted opin-

ions. But McLoud also flatly testified, on direct, that the floor was reasonably safe. The "hazardous" language, which appellant seizes upon was elicited on cross-examination and when in context means nothing more than that a floor is less safe when wet than when dry (a point not disputed) and not that a wet floor is not reasonably safe. McLoud later made this clear when he said that water could cause "a modest, and only modest, [and] not a substantial change in the hazard." A consideration of the record as a whole demonstrates that McLoud, as respondent's witness, viewed the garage floor as being safe, and it was within the province of the jury to accept his opinion rather than that of Kirchhoff.

Second, appellant appears to argue that respondent's shop could not be reasonably safe as a matter of law because rainwater was "pouring" over the floor. However, appellant himself described the floor only as being "wet." One of the witnesses saw "water running in the direction of the drain" but did not elaborate on the volume. The other two witnesses merely called the floor wet or damp. That rain blew on appellant's head as he lay on the floor does not show that water flowed over the floor in any particular proportions. Thus, there is no evidence in the record to support the theory that water was pouring into the building.

Even assuming that there was a significant amount of water on the floor, the jury was nonetheless free to have concluded that the place was as safe as its nature would permit. After all, a car was being washed, as was customary, in the general area where appellant fell and the floor would naturally be wet there.

The safe-place statute "does not guarantee safety." [6] The duty set by the statute is not breached merely be-

---

[6] *Paaske v. Perfex Corp., supra,* footnote 1, at page 490.

cause the place could be made safer,[7] and the mere fact that an accident has happened does not demonstrate that the place was unsafe.[8] Here, the respondent owner or employer was required to keep his premises as safe as the nature thereof would reasonably permit.[9] This was a fact question for the jury and its verdict is supported by the evidence.

*By the Court.*—Judgment affirmed.

---

[7] Ibid.

[8] *Zernia v. Capitol Court Corp., supra,* footnote 1, at page 170e; *Heckel v. Standard Gateway Theater* (1938), 229 Wis. 80, 85, 281 N. W. 640.

[9] *Paaske v. Perfex Corp., supra,* footnote 1; *Zernia v. Capitol Court Corp., supra,* footnote 1; *Powless v. Milwaukee County* (1959), 6 Wis. (2d) 78, 94 N. W. (2d) 187; *Olson v. Whitney Brothers Co.* (1915), 160 Wis. 606, 150 N. W. 959.