KAISER and wife, Appellants, v. COOK and wife, d/b/a ELMER AND LORRAINE COOK & SONS, CEDAR LAKE SPEEDWAY, Respondents.

*No. 225. Submitted under sec. (Rule) 251.54 March 6, 1975.—Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 50.)

For the appellants the cause was submitted on the brief of *C. M. Bye* and *Gaylord & Bye,* all of River Falls.

For the respondents the cause was submitted on the brief of *Gavic, Richardson & Skow* of Spring Valley.

WILKIE, C. J.  On this appeal we are asked to reinstate the jury verdict in this personal injury action brought under the safe-place statute [1] by the plaintiff-appellant, Marie Kaiser, who was injured while a spectator at the Cedar Lake Speedway in St. Croix county, an automobile racetrack owned and operated by defendants-respondents, Elmer and Lorraine Cook. An automobile tire flew off a racing car, sailed over a fence surrounding the track, and struck the plaintiff in the head and shoulder. The jury found causal negligence on both sides, attributing 20 percent to Mrs. Kaiser and 80 percent to the defendants. Damages were fixed at $10,000 for Mrs. Kaiser, and those of her coplaintiff husband for medical and other expenses at $697.11. The only question on this appeal is whether, following a jury verdict, the trial court was correct in granting defendants' motion for a directed verdict. The court found insufficient evidence to support a finding that the defendants' racetrack was not maintained and operated as safe as the nature of the place reasonably permitted. The court also seemed to feel, but did not explicitly state, that Mrs. Kaiser's causal negligence as a matter of law exceeded any negligence of the defendants. We conclude that the trial court's determinations were incorrect in both respects. Therefore, we reverse the judgment with instructions to reinstate the jury verdict and grant judgment thereon to the plaintiffs.

The accident occurred on the evening of August 9, 1969. The one-third mile track of the speedway is oval shaped.

---

[1] Sec. 101.11, Stats.

There are grandstands on both straightaways which seat a total of 2,500 people. Spectators are also permitted to watch the races from the north end of the track, which is opposite the No. 3 and No. 4 turns. At this location the grounds are tiered and cars are permitted on the various tiers allowing patrons to watch from a car or stand or sit outside the car. It was estimated that from 50 to 75 percent of the individuals driving their cars to these tiers watch the races from outside their cars as opposed to sitting in them. At the front edge of the first of three tiers is a 10-foot wire fence. Each tier is approximately five to six feet higher and approximately 60 feet farther back than the preceding tier.

Mrs. Kaiser arrived at the track on the evening the accident occurred as a passenger in a car driven by Gloria Kavitz. The car was parked on the second tier opposite turn 4 of the track. Although Mrs. Kaiser sat inside the car to watch several races, when a race came up that she was particularly interested in she got out of the car to watch. Just prior to the accident, Mrs. Kaiser was standing between two parked cars on tier 2, facing the track, and watching the lead car in a race. Then, while between the third and fourth turns, the second race car in the pack lost a wheel which flew from the track towards Mrs. Kaiser. She saw it coming, yelled "tire," and pushed her friend and daughter-in-law under the bumper of the car. Seconds later the tire smashed into her left shoulder, knocking her to the ground on top of her grandson, and fracturing her left shoulder blade and three ribs.

Mrs. Kaiser testified that she had been to see from 40 to 50 races in her lifetime at various tracks. She had been to this particular track three or four times. Although she had seen cars lose tires or other parts, she said she had never been to a race where she saw a wheel leave a car and travel into the spectator area. She said she did not know whether it was safer to view the race from

the straightaways or the curves. Mrs. Kaiser said she saw no warning signs at the track concerning the dangers of watching from the north end, heard no warnings over the loudspeaker system and did not receive any printed warnings when she purchased her ticket.

Defendant Elmer Cook designed and built the speedway himself in 1957, and has owned and operated it with his wife ever since. He referred to the track as a "drive-in racetrack," similar in concept to a drive-in movie theater. He said the spectators watching from the north end were supposed to stay in their cars although he admitted there were no signs or printed warnings to this effect. Crucially, Mr. Cook testified that at least once every night a car loses a wheel at the track and approximately three or four times a year one of these lost wheels goes into the spectator area. Other witnesses stated that this happened anywhere from once to as many as seven or eight times a year.

On this review, the only question in respect to whether the trial court erred in directing a verdict for the defendants-respondents is whether there is sufficient evidence, viewing it in the light most favorable to the plaintiff, to sustain the jury finding of negligence.[2] In making this determination, we must bear in mind that this case arises under the safe-place statute where the duty of the defendants is to maintain their racetrack in a reasonably safe condition.[3] Of course, "the mere fact that an accident has happened does not demonstrate that the place was unsafe."[4] Thus, the specific question here is whether these defendants have maintained and operated their racetrack as safely as the nature of a racetrack will reasonably permit. We conclude that they have not.

[2] *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 699, 151 N. W. 2d 741.

[3] *Gross v. Denow* (1973), 61 Wis. 2d 40, 46, 212 N. W. 2d 2.

[4] *De Marco v. Braund* (1966), 30 Wis. 2d 675, 681, 142 N. W. 2d 165.

We reject plaintiffs' first contention that the defendants acted unreasonably in failing to build an adequate fence to protect spectators at the north end of the track. The fence at that end is 10 feet high and, in fact, the top of the fence is approximately 14 or 15 feet above the plane of the track. Several wheels a year clear the fence, but there is nothing in the record to indicate how high, or with how much force the wheels go over. Moreover, no witness gave such information concerning the wheel that injured Mrs. Kaiser. Thus it is impossible to know how high and how strong a fence defendants should or could have built to prevent injury to spectators.

We conclude that the defendants did violate the safe-place statute by allowing spectators to watch the races from the third and fourth turns. This was a particularly dangerous area. Elmer Cook himself admitted the fourth turn, where Mrs. Kaiser was injured, was the "worst place" for wheels going over the fence. Cook also said that spectators should stay in their cars. Yet there were no warnings to this effect. Two witnesses testified that the Cedar Lake Speedway was very unusual or unique among racetracks in the area in allowing spectators to view the races from the third and fourth turns. Evidence of compliance with custom in a trade is admissible in safe-place cases as a shield to deny liability,[5] and evidence of noncompliance is admissible as a sword to impose liability.[6] Such evidence is not conclusive, but

[5] *Heckendorf v. J. C. Penney Co.* (1966), 31 Wis. 2d 346, 142 N. W. 2d 801 (swinging doors without safety devices in common use); *Raim v. Ventura* (1962), 16 Wis. 2d 67, 113 N. W. 2d 827 (virtually all plate-glass doors in general usage were similarly constructed). *See Johannsen v. Peter P. Woboril, Inc.* (1952), 260 Wis. 341, 51 N. W. 2d 53 (evidence of patently unsafe custom held properly excluded).

[6] *Presti v. O'Donahue* (1964), 25 Wis. 2d 594, 131 N. W. 2d 273 (safer portable loading platform in general use would have prevented injury); *Gilson v. Drees Brothers* (1963), 19 Wis. 2d

here it at least permitted the jury to draw the inference that defendants' racetrack was not operated as safely as a racetrack could be. If defendants had prohibited spectators from watching from the dangerous third and fourth turns, as done in other racetracks, Mrs. Kaiser would not have been injured. An employer may be held liable under the safe-place statute not only where he fails to construct or maintain safety structures such as a fence, but also simply where he knowingly permits employees or frequenters to venture into a dangerous area. In *Gross v. Denow*,[7] holding the defendant racetrack owner violated the statute by maintaining a narrow road used by both pedestrians and vehicles, the court said:

". . . such known use to which the narrow road was being put entitled a jury to find that devices reasonably available to the racetrack operator might have been used to meet the standard of care required by the statute. Prohibiting pedestrian traffic or providing a fence separating pedestrian and vehicular traffic are devices that would have made the road as safe as its nature would reasonably permit."

Thus in the instant case, although evidence concerning a safety fence was inadequate, the jury could have found that defendants acted unreasonably under the safe-place statute in allowing spectators to watch from the third and fourth turns. We conclude therefore that the trial court erred in directing a verdict for defendants.

Defendants rely upon the intermediate Pennsylvania court decision in *Blake v. Fried*,[8] where racetrack spectators injured by a flying wheel were held unable to recover. This case is, however, completely inapposite for three reasons: (1) The law of ordinary negligence rather than

---

252, 120 N. W. 2d 63 (not common practice to send untethered bulls into auction ring).

[7] (1973), 61 Wis. 2d 40, 48, 212 N. W. 2d 2.

[8] (1953), 173 Pa. Super. 27, 95 Atl. 2d 360.

any safe-place statute was applied; (2) the spectators were injured in the grandstand rather than in a particularly dangerous area as in the instant case; and (3) the court found the risk of injury unforeseeable by defendants, whereas in the instant case defendants knew that wheels flew into the crowd and had injured a spectator in the past. Defendants also cite *Morton v. California Sports Car Club*,[9] where another racing spectator was held unable to recover. This case was not only based upon ordinary negligence but also plaintiff's suit was held barred under the assumption-of-risk doctrine, which is inapplicable under Wisconsin's safe-place statute.[10] Other cases have imposed liability under negligence law for injuries to racetrack patrons.[11]

We also conclude that Mrs. Kaiser's contributory negligence did not exceed the negligence of defendants as a matter of law. The apportionment of negligence as between parties is ordinarily a question for the jury. This is precisely such a case. It was up to the jury to determine the quantum of negligence on the part of Mrs. Kaiser in going to the special spectator area where cars were parked at the end of the track, and any negligence on her part in watching the specific race from a point outside the car. It was also for the jury to determine the quantum of negligence on the part of the defendants in failing to prohibit spectators from watching from the area near the dangerous third and fourth turns.

---

[9] (1958), 163 Cal. App. 2d 685, 329 Pac. 2d 967.

[10] *Sachse v. Mayer* (1963), 18 Wis. 2d 457, 463, 118 N. W. 2d 914.

[11] *E.g., Atlantic Rural Exposition, Inc. v. Fagan* (1953), 195 Va. 13, 77 S. E. 2d 368; *Ellingson v. World Amusement Service Asso., Inc.* (1928), 175 Minn. 563, 222 N. W. 335 (racetrack owner liable for negligence in tort due in part to failure to prohibit spectators from watching on last turn). *See generally,* Annot., *Liability of owner or operator of auto race track for injury to patron* (1954), 37 A. L. R. 2d 391.

Defendants rely principally upon *Powless v. Milwaukee County* [12] in contending that Mrs. Kaiser's negligence exceeded theirs. In *Powless* the plaintiff, who attended a Milwaukee Braves baseball game and sat in the twelfth row of the lower deck near third base, was injured by a foul ball. The court found it unnecessary to decide whether defendants violated the safe-place statute in failing to erect any protective netting in the stadium except behind home plate, because it held as a matter of law plaintiff's negligence at least equalled any negligence of defendants. The court noted that plaintiff could have sat behind home plate instead, that she was paying no attention to the batter at the time the ball was hit and that she failed to respond immediately to voices saying the ball was coming her way:

". . . However, we find that the evidence of contributory negligence is so strong that it is unnecessary to decide whether such failure is a violation. We are convinced that the plaintiff—in voluntarily going to the game, sitting where she did, ignoring the fact that the batter was at bat, ignoring the noise and excitement after hearing the report of the bat hitting the ball, and in failing to take any precaution for her own safety—was at least as negligent as the defendants, assuming defendants were negligent under the safe-place statute." [13]

The court further pointed out that the plaintiff was aware that foul balls were regularly hit into the stands.

The instant case differs from *Powless* in several respects. It is true that Mrs. Kaiser voluntarily attended the racetrack but unless racetrack operators are to be completely immune from any liability, this fact alone cannot defeat her right to recover. As to the other factors, Mrs. Kaiser said she did not realize that watching from the curve would be more dangerous than sitting in

---

[12] (1959), 6 Wis. 2d 78, 94 N. W. 2d 187.

[13] *Id.* at page 86.

the grandstand, nor was she aware that tires would fly into the spectator area. She could reasonably have believed that she was watching the race from a safe location. Additionally, unlike the plaintiff in *Powless,* here, Mrs. Kaiser was watching the race closely immediately prior to the accident. Thus, we conclude that here, unlike *Powless,* the injured spectator was not as a matter of law negligent for her own safety to a degree that exceeded the safe-place negligence of the defendants.

Because appellants failed to comply with sec. (Rule) 251.34 (5) (c), Stats., requiring the abridgment of testimony in the appendix to be in narrative form, we allow as costs on this reversal only 23 pages of their appendix.

*By the Court.*—Judgment reversed and cause remanded with instructions to enter judgment for plaintiffs in accordance with the jury verdict; costs on this appeal as per opinion.