No. 88,021

SHEILA MARSHALL, *Appellant,* v. HEARTLAND PARK TOPEKA and NATIONAL HOTROD ASSOCIATION, INC., *Appellees.*

(49 P.3d 501)

 Opinion filed July 12, 2002. 

*David R. Vandeginste* and *Danne W. Webb*, of Miller Law Firm, P.C., of Kansas City, argued the cause and were on the briefs for appellant.

*Andrew M. DeMarea*, of Shughart, Thompson & Kilroy, P.C., of Kansas City, Missouri, argued the cause, and *Paul T. Yarbrough*, of Butt, Thornton, & Baehr, P.C., of Albuquerque, New Mexico, was with him on the brief for appellees.

The opinion of the court was delivered by

LARSON, J.: This is a personal injury action where the trial court granted summary judgment to defendants premised on a finding that plaintiff's expert failed to demonstrate defendants breached their duty of care to her. Based on the standard of review of summary judgment motions, we reverse the trial court and remand for further consideration.

The facts of the incident resulting in the alleged injury to the plaintiff in this case are not disputed. On October 17, 1998, Sheila Marshall and her family attended a drag racing event at Heartland Park in Topeka, Kansas. During a race between two top-fuel dragsters, the vehicle driven by Pat Dakin "blew over," which means the front end of the dragster raised off the ground while it was rapidly accelerating down the track.

The dragster became air born and both of the large rear tires ripped off. One of the tires hit a 40-inch high concrete barrier wall running along side of the track and then careened onto the grandstand, striking and injuring Marshall who was seated several rows up in the spectator bleachers.

Marshall's suit against Heartland Park and the National Hot Rod Association (NHRA) alleged negligence in (1) failure to maintain a safe place for patrons to view the event; (2) failure to maintain a fence of adequate height to deflect debris; (3) failure to require owners of drag racers participating in the event to equip vehicles with proper equipment; and (4) failure to warn Marshall that the seating area was dangerous and patrons were subject to severe injury.

The defendants answered, contending (1) the petition failed to state a claim upon which relief can be granted, (2) contributory

negligence of other parties, (3) intervening and superseding causation, (4) assumption of risk and waiver of liability, and (5) denial of any liability.

After discovery was held by both parties, the defendants moved for summary judgment, contending there was no evidence that either of them breached any duty to plaintiff or that any act of either of them caused her injuries, and that plaintiff waived and released any liability by the defendants based on her knowledge of warning signs, ticket stub disclaimers, and the resulting assumption of the risks inherent in attending a drag racing event.

Marshall's response to the defendants' summary judgment motion relied heavily on the testimony and opinions of her expert witness, Boulter Kelsey. Kelsey is a professional engineer with drag racing experience going back to the 1950's. Kelsey's report, which was part of Marshall's response, concluded the fence next to the track was inadequate, as were the wheel specifications on the dragster, which had been approved by the NHRA. He opined that an 18-foot fence with an angled top like the ones used at major oval racetracks, placed within 35 feet of the drag strip, would be an appropriate fence for drag races and would have prevented the tire in the present case from striking Marshall.

Kelsey's opinion pointed to the changes in the sport of drag racing over the past 40 years from vehicles that barely reached 150 mph over a quarter of a mile to those exceeding 300 mph. He also noted that racers of today can operate in the range of 6000 horse power. With such power and speed, he concluded that barriers between spectators and the track must be higher and angled to prevent debris from reaching spectator areas.

Kelsey also opined that the standards by which wheels were made and attached to the dragsters were insufficient. He concluded that with appropriate standards, the wheels should not have ripped away from the vehicle. The wheels and attachment appear to have met the standard adopted by the NHRA, although there was testimony by Carl Olsen, an employee of the SFI Foundation, Inc., an independent company that sets minimum performance standards for automotive and racing equipment that the wheel specifications were being "looked at" as the result of this incident.

The defendants' experts' reports reached opposite conclusions. One expert stated Heartland Park was state of the art and reasonably safe. The other expert used computer graphics and accident reconstruction techniques and opined that Kelsey's suggested fence would not have contained the flying wheel. The defendants moved for Kelsey to be struck as an expert, contending numerous procedural deficiencies, lack of qualifications, lack of foundation for opinion, and various other inconsistencies.

The defendants also relied in part on the configuration of the racetrack and the viewing grandstands, which were claimed to be based on "underwriting"standards established by insurance carriers for the NHRA.

The trial court's grant of summary judgment in favor of Heartland Park was limited to the element of breach of duty, holding no facts showed a failure in the duty of care to prevent the incident. The trial court did not consider or rule on the defense of waiver, disclaimer, and release of liability, nor did the trial court expressly rule on defendants' motion to strike Kelsey as an expert witness, although the decision stated: "There are problems with the use of this expert report." Several problems were enumerated, but the trial court did consider Kelsey's report and conclusions and found them to be insufficient to establish a breach of duty.

Marshall has appealed from the trial court's ruling. Our jurisdiction is pursuant to K.S.A. 20-3018(c) (transfer from the Court of Appeals on our own motion).

Our standard of review of summary judgment motions is well known as set forth in *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999):

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could

differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998)."

We further said in *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998), that "[a] defendant is entitled to summary judgment if the defendant can establish the absence of evidence necessary to support an essential element of the plaintiff's case." But, as we stated in *Brown v. Wichita State University, P.E.C., Inc.*, 217 Kan. 661, 665, 538 P.2d 713 (1975), the party opposing the motion " 'is to be given the benefit of all reasonable inferences to be drawn from the evidentiary matter and all facts asserted by the party opposing the motion and supported by affidavits or other evidentiary material must be taken as true.' "

We have said that whether a "duty has been breached is a question of fact," and "whether there is a causal connection between the breached duty and the injuries sustained is also a question of fact." *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983) *disapproved on other grounds Boulanger v. Pol,* 258 Kan. 289, 900 P.2d 823 (1995). We have also said: "[T]he presence or absence of negligence is *ordinarily* a question of fact for the jury, rather than one for judicial resolution by summary judgment." (Emphasis added.) *Honeycutt v. City of Wichita*, 247 Kan. 250, 251, 796 P.2d 549 (1990).

As we noted in *Durflinger v. Artiles:*

"Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs. Further, if recovery is to be had for such negligence, the injured party must show: (1) a causal connection between the duty breached and the injury received; and (2) he or she was damaged by the negligence." 234 Kan. at 488.

While the existence of damage to Marshall is disputed, at this point, this case has been decided on the existence or absence of a breach of duty.

The standard established to determine the duty owed to patrons of exhibitors for profit in Kansas has been stated in *Cale v. Johnson*, 177 Kan. 576, 280 P.2d 588 (1955). In *Cale*, a patron was struck by debris thrown in his face and eyes by the wheels of a racing stock car and the duty was held to be based on language from *Klish*

*v. Alaskan Amusement Co.,* 153 Kan. 93, Syl. ¶ 1, 109 P.2d 75 (1941), where we stated: " 'While the proprietor of a place of public amusement is held to a stricter accountability for injury to patrons than owners of private premises generally, the rule is that he is not an insurer of the patrons, but owes them only what, under the particular circumstances, is ordinary and reasonable care.' "

The *Cale* opinion quotes from Annot., 37 A.L.R.2d 391 and the legal encyclopedias, which summarize the duty as one to exercise care under the circumstances to make a racetrack reasonably safe and free from dangers which are likely to arise during or in consequence of the races. 177 Kan. at 580. A more recent statement of the standard of care is found in 27A Am. Jur. 2d, Entertainment and Sports Law § 78, p. 436, which states: "[S]uch care being commensurate with the known or reasonably foreseeable dangers incident to racing motor vehicles at high speeds, such as flying wheels. This duty includes the erection of such fences or other protective devices between the track and the places assigned to the spectators as will afford them reasonable protection."

The authority for the above statement is set forth at footnote 68 to the Am. Jur. 2d cite above quoted, which states:

"*Atlantic Rural Exposition, Inc. v. Fagan,* 195 Va 13, 77 SE2d 368, 37 ALR2d 378 (that a wheel might become freed from a racing car and enter the area occupied by spectators has been held, under the dominant facts and circumstances appearing in the action, to have been reasonably foreseeable so as to render the owner of the premises and the promoter liable for the resulting injury to a patron).

"While the flying off of a wheel does not happen with great frequency, it is by no means an isolated or highly improbable occurrence, and the jury could have found that the danger was such that the operators of a race should have anticipated it and given suitable warning. *Alden v. Norwood Arena, Inc.,* 332 Mass 267, 124 NE2d 505.

"An operator of a racetrack violated the safe-place statute and was liable to a spectator injured by a flying wheel, where the jury could have found that the racetrack operators acted unreasonably in allowing the spectators to watch the race from the third and fourth turns; the negligence of the spectator did not exceed that of the racetrack operators, where the spectator testified that she did not realize that watching from a curve would be more dangerous than sitting in the grandstand, nor did she know that tires would fly into the spectator area. *Kaiser v. Cook,* 67 Wis 2d 460, 227 NW2d 50."

We have no safe-place statute as exists in Wisconsin, but these cases show that flying wheels are not an unknown occurrence to the racing industry and should have been foreseeable to both NHRA and Heartland Park.

The trial court considered the testimony and conclusions of Kelsey as an expert witness and, under our standard of review, we must resolve all facts in favor of his testimony and allow all inferences which may reasonably be drawn from his report and opinions. At this point, this appears to deal with the allegations of insufficient barriers (fencing) or insufficient wheel standards.

Kelsey concluded that in order for the defendant's fencing to be effective, it should have been at least 18 feet high with a curved or angled section slanting back toward the track and located 35 feet from the track. He concluded that, "had a sufficient wheel/debris fence been placed close to the racing track surface," the wheel would have been restrained to an area protective of spectators. This testimony provides sufficient basis to show the defendants' violated their duty of care for purposes of summary judgment.

It has been our consistent holding that after an expert's testimony is admitted, "the weight of such testimony is a matter of consideration for the trier of fact." *Plains Transp. of Kan., Inc. v. King*, 224 Kan. 17, 21, 578 P.2d 1095 (1978). The defendants rely on an exception to this decision as set forth in *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 549 P.2d 1383 (1976).

In *Jones*, the expert witness testified the amount of malodorant placed in propane gas was insufficient and contributed to an explosion. He opined the amount should have been three to nine times what the existing industry and legislative standard required. We held his testimony was insufficient to create a material question of fact because he had no supporting empirical data justifying disagreement with the recognized industry and legislative standard.

In our present case, there are no existing recognized standards comparable to those in the *Jones* case. In fact, the "industry standards" seem only to relate to NHRA insurance guidelines. Such guidelines are self-serving and are not of sufficient authority to immunize an insured from liability. The "standards" do not establish the promoters' duty to their patrons. In fact, one NHRA rep-

resentative testified, "[W]e don't characterize them as safety standards." *Jones* is distinguishable from Marshall's case.

The trial court grounded its holding on the defendants' compliance with the industry standards in noting the barriers in place "met or exceeded the minimum standards in use by the industry and required by the insurance underwriters of racing events." Such a holding might be justified if the standards had legal, statutory, or some recognized industry basis, but they have none of these qualities. The court admitted the standards are not a total shield to liability but seems to have concluded as a matter of fact that they exemplify reasonable care. This is a fact question to be determined by a finder of fact who should consider Kelsey's allegations that a higher and closer barrier should be utilized.

While the trial court talks of problems with Kelsey's report, it does not appear his opinion is beyond his knowledge or field of expertise. As stated by the Court of Appeals in *Horsch v. Terminix Int'l Co.*, 19 Kan. App. 2d 134, 141, 865 P.2d 1044 (1993), *rev. denied* 254 Kan. 1007 (1994):

"A qualified expert is entitled to express his or her opinion. The factors on which that opinion is based go only to the weight of the testimony and not to its admissibility. The testimony should be stricken only if the factors used by the expert go beyond his or her knowledge and expertise."

Kelsey has extensive experience in drag racing which dates from the mid 1950s. He is a professional engineer. The trial court did not exclude his conclusions and his report and did not find he was incompetent to testify about the matters as to which he opined. Given our standard of review, his opinion as to the breach of duty was sufficient to raise an issue of material fact that may not be resolved by summary judgment.

Kelsey's report is attacked for not stating what kind of material the absent fence should have been constructed of. This omission is not fatal. The question is the size and location of the fencing and not its strength. The issue is not that the wheel broke through a barrier, but rather that there was no barrier there to restrain it.

An examination of Kelsey's report shows it was based on "materials reviewed," physical investigation of Heartland Park, and re-

view of videotapes and facts of the incident. Our duty on this summary judgment motion to draw all reasonable inferences in Marshall's favor requires the conclusion that sufficient available information was considered. We conclude that a material question of fact exists as to the adequacy and safety of the barriers and fencing utilized by the defendants. We hold summary judgment should not have been granted at this stage of the proceedings below.

There was no analysis of the sufficiency of the standards adopted by the NHRA, for the trial court did not reach this question. Whether there is sufficient evidence to support Marshall's claim of negligence based on faulty wheel specifications is yet to be considered by the trial court.

Additionally, there do appear to be objections as to Kelsey's report and qualifications which the defendants have specifically raised by separate motion, and they should be considered on remand.

Finally, the issues of waiver, release, or assumption of risk were not considered by the trial court and these issues remain to be considered on remand.

Reversed and remanded for further consideration by the trial court.