CHILLE, Plaintiff and Respondent, v. HOWELL, Defendant: GRIMSTAD and another, Defendants and Appellants.

*March 3—April 11, 1967.*

For the appellants there was a brief by *W. L. Jackman,* attorney, and *Hart, Kraege, Jackman & Wightman* and *John D. Thiel* of counsel, all of Madison, and oral argument by *W. L. Jackman.*

For the respondent there was a brief and oral argument by *Hugh F. Oldenburg* of Madison.

BEILFUSS, J.   The defendants-appellants, Grimstad and his insurance carrier (the defendant Howell, although named as a respondent, has not appeared), contend that the trial court erred in that (1) it refused to grant a

new trial in the interests of justice, and (2) in its application of the comparative-negligence statute.

At the close of the testimony counsel for Grimstad and his insurance carrier moved for directed verdict upon the ground that no causal negligence on the part of Grimstad had been established. The trial court ruled there was sufficient credible evidence to warrant a jury finding that Grimstad was negligent and denied the motion. In the appellants' written motions after verdict they did not specifically challenge any answer or finding of the jury but moved for a new trial in the interests of justice.

The trial court's ruling upon a motion for a new trial in the interests of justice is highly discretionary and will not be reversed upon appeal in the absence of a clear showing of abuse of discretion or an erroneous application of the law.

In *Baker v. Herman Mut. Ins. Co.* (1962), 17 Wis. (2d) 597, 607, 117 N. W. (2d) 725, where the trial court refused to grant a new trial in the interests of justice even though it expressed some dissatisfaction with the result, upon review, this court stated:

"In such situations, where the trial court has considered the advisability of granting a new trial and concluded that it should not be granted, this court is ordinarily inclined to defer to this decision of the trial court." [1]

The appellants do not argue the traditional reasons for a new trial in the interests of justice, such as the verdict being against the great weight of the evidence, an accumulation of nonprejudicial errors, excessive damages, improper influences upon jury and others, but rather contend there is no credible evidence to support the finding of causal negligence on the part of Grimstad.

[1] See also *Mack Trucks, Inc., v. Sunde* (1963), 19 Wis. (2d) 129, 140, 141, 119 N. W. (2d) 321; *Wojkiewicz v. American Family Mut. Ins. Co.* (1967), 33 Wis. (2d) 351, 147 N. W. (2d) 249.

More specifically, the appellants argue that Grimstad was on an arterial highway and that Howell was required to stop and to yield the right-of-way;[2] that he was not negligent as to lookout; that he was not negligent as to speed; and that he was entitled to be exonerated from negligence as a matter of law because of an emergency created by Howell.

Highway 51 approaches the city of Madison from the south and crosses Highways 12 and 18, known as the "Beltline," by means of an overhead viaduct. The viaduct is 18 feet high and descends at an angle of 2.8 degrees for a distance of about 600 feet. At or very near the end of the descent, Femrite drive intersects Highway 51 at right angles in a north-south direction. There is a stop sign on Femrite drive 15 to 20 feet west of the intersection with Highway 51. The Howell car was proceeding east on Femrite drive and Grimstad north on Highway 51. The collision occurred in the southeast quadrant of the intersection. Only Grimstad, Howell, and Chille testified as to the events that preceded the accident.

Grimstad testified that he was returning to Madison from a supper club located three and one-half miles south of the scene of the accident, where he was employed as a part-time bartender, that he had worked at his regular employment all day and at the supper club from 5:30 p. m. until about 3 a. m., that he was tired and wanted to get home but that he was in no hurry, and that he did not drink any intoxicants. He further testified that his speed was about 40 miles per hour; that he first saw the Howell car when he was at the top of the viaduct and that it appeared to be stopped or moving very slowly about 15 to 20 feet from the intersection; that he made three more observations of the Howell car

---

[2] Sec. 346.18 (3), Stats. "RULE AT INTERSECTION WITH THROUGH HIGHWAY. The operator of a vehicle shall stop as required by s. 346.46 before entering a through highway, and shall yield the right of way to other vehicles which have entered or are approaching the intersection upon the through highway."

when about one fourth, halfway and three fourths of the way down the decline and that the Howell car was in the same relative position, and stopped or moving slowly; that when he was 50 to 60 feet from the intersection he noticed the Howell car entering the intersection; that he had not decreased his speed until this instant; that he then put on his brakes; and that he did not deviate either to the left or right, nor did he blow his horn.

Mrs. Howell testified that she came to a complete stop at the stop sign; that she looked both north and south and did not see a car or lights of a car; that she drove into the intersection and did not see the lights of the Grimstad car before the collision but heard Chille exclaim something just before the impact.

Chille's testimony was that the Howell car had come to a stop before entering the intersection; that he looked before Mrs. Howell started into the intersection and that he did not see Grimstad's car or lights; that Mrs. Howell's speed in the intersection was eight to 10 miles per hour; that when the Howell car was about halfway across the intersection he saw the lights of the Grimstad car 300 to 400 feet away approaching at a high speed, which he estimated to be 60 to 65 miles per hour, and he "hollered" to Mrs. Howell (on cross-examination he conceded it was difficult to accurately estimate the speed and that it may have been slower); and that between 10 p. m. and 3 a. m. he had consumed eight whiskey and seven-ups.

The defendants argue that Grimstad had no duty to anticipate that Mrs. Howell would not yield the right-of-way and in fact had the right to assume she would yield the right-of-way, and cite several cases in support of this argument.[3]

[3] *Schlueter v. Grady* (1963), 20 Wis. (2d) 546, 123 N. W. (2d) 458; *Lawrence v. E. W. Wylie Co.* (1954), 267 Wis. 239, 64 N. W. (2d) 820; *Clocherez v. Miller* (1952), 262 Wis. 492, 55 N. W. (2d) 881.

However, in *Magin v. Bemis* (1962), 17 Wis. (2d) 192, 196, 116 N. W. (2d) 129, this court stated:

"The jury was correctly instructed that while one may have the right-of-way and may presume others will respect it, he may nevertheless be negligent in respect to management and control if his right-of-way is not respected and he does not do what he can do to prevent the accident."

This case was submitted to the jury upon an ultimate-fact verdict wherein the jury was asked whether the person named in the questions was negligent.

Clearly, Mrs. Howell was negligent as to lookout and failure to yield the right-of-way. These acts of negligence were the dominant causes of the accident. The jury properly responded to this situation by finding Mrs. Howell negligent and attributing 75 percent of the causal negligence to her.

Insofar as Mr. Grimstad was concerned, the trial court was of the opinion that there was sufficient evidence in the record to warrant a jury determination as to whether he was negligent. In its instructions the court properly advised the jury that Grimstad had the right to assume that Mrs. Howell would yield the right-of-way and would not otherwise violate the rules of the road, and within proper limitations instructed it as to Grimstad's duty as to lookout, statutory speed, and management and control. On behalf of Mr. Grimstad the court further instructed the jury that if Grimstad was suddenly confronted with an emergency not caused or contributed to by his own negligence he was to be found not negligent. Although the appellants contend that Grimstad should have been exonerated from a negligence finding as a matter of law because of an emergency, we believe the question of emergency was properly submitted to the jury.[4]

---

[4] See *Geis v. Hirth* (1966), 32 Wis. (2d) 580, 587, 146 N. W. (2d) 459.

While evidence is meager, the jury could find from the credible evidence that Grimstad did not properly evaluate the position and movement of the Howell vehicle and, therefore, was negligent as to lookout; that he was traveling in excess of the statutory speed; and that he did not properly manage and control his vehicle so as to attempt to avoid the collision.

The experienced and able trial judge who heard the testimony and viewed the witnesses was of the opinion that the jury could properly find causal negligence on the part of Grimstad.

In *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 290, 128 N. W. (2d) 400, we stated:

"When a jury verdict is attacked we inquire only whether there is any credible evidence that, under a reasonable view, supports the verdict. This is especially so when the verdict has the trial court's approval. *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 62 N. W. (2d) 549, 63 N. W. (2d) 740; *Hibner v. Lindauer* (1963), 18 Wis. (2d) 451, 118 N. W. (2d) 873."

We are of the opinion the jury's findings of causal negligence on the part of Mrs. Howell in the amount of 75 percent, Mr. Grimstad 20 percent, and Mr. Chille five percent, must be upheld.

The appellants urgently contend that this court should reconstrue the comparative-negligence statute (sec. 895.-045) and overrule our construction of it as announced in *Walker v. Kroger Grocery & Baking Co.* (1934), 214 Wis. 519, 252 N. W. 721, as it applies to comparison of negligence in multiple defendant cases.

Sec. 895.045, Stats., provides:

"**Contributory negligence; when bars recovery.** Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished

in the proportion to the amount of negligence attributable to the person recovering."

*Walker v. Kroger Grocery & Baking Co., supra,* at page 535 stated:

"Sec. 331.045, Stats. [now sec. 895.045] does not change the common-law rule as to the extent to which every joint tort-feasor, who is liable at all, is liable for such damage as the injured person is now entitled to recover. At common law the injured person could not recover at all, if there was some negligence on his part which contributed to his injury. But, if he was entirely free from negligence, every one of several tort-feasors, whose negligence was a cause of the injury, was liable for all of the resulting damage even though the negligence attributable to one of them may have been insignificant in proportion to the negligence of the others. Now, by virtue of sec. 331.045, Stats., the instances in which there is a right to recover have been increased in that, even though there was contributory negligence, recovery is not barred if such negligence was not as great as the negligence of the person against whom recovery is sought. If such contributory negligence was as great as the negligence of one of the tort-feasors against whom recovery is sought, then as to that particular tort-feasor there still is no right to recover. That tort-feasor is out of the picture as far as liability on his part to the party whose negligence was as great as his is concerned. On the other hand, from every remaining tort-feasor, whose negligence was greater than that of the person seeking to recover, there exists now, by virtue of the statute, a right to recover, subject, however, to the limitation prescribed by the statute, that the damages allowed shall be diminished in proportion to the negligence attributable to the person recovering. That is the only limitation prescribed in respect to the amount recoverable. Otherwise, there is no provision which effects any change in the common-law rule that all tort-feasors who are liable at all, are liable to the injured person for the entire amount now recoverable by him." [5]

[5] *Ross v. Koberstein* (1936), 220 Wis. 73, 264 N. W. 642; *Patterson v. Edgerton Sand & Gravel Co.* (1938), 227 Wis. 11, 277 N. W. 636; *Caldwell v. Piggly Wiggly Madison Co.* (1966), 32 Wis. (2d) 447, 145 N. W. (2d) 745.

In *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 6, 114 N. W. (2d) 105, wherein the rule of contribution between tort-feasors who sustain common liability because causal negligence was changed to reflect liability in proportion to respective fault, the court was careful to point out:

"We make it plain at the outset that this refinement of the rule of contribution does not apply to or change the plaintiff's right to recover against any defendant tort-feasor the total amount of his damage to which he is entitled."

The appellants' counsel does demonstrate, by way of hypothetical illustrations, instances where one tort-feasor is required to pay all the claimants' recoverable damages, when the other tort-feasor is uninsured and judgment proof, even though causal negligence attributable to him is relatively minor.

The appellants urge that in this instance where recovery against Howell is impossible or improbable that Chille's negligence should be compared to Grimstad as a whole which would reduce Chille's recovery by $5/25$ so as to permit a recovery of 80 percent of the amount awarded rather than 95 percent as ordered by the trial court.

The construction of the comparative-negligence statute as announced in *Walker v. Kroger Grocery & Baking Co., supra,* has been the law since 1934; several of our cases have reaffirmed the rule based upon the ancient common-law concept of joint and several liability of joint tort-feasors. We are not persuaded it should be changed.

*By the Court.*—Judgment affirmed.

WILKIE and HANSEN, JJ., took no part.