SHELDON, Appellant, v. SINGER, Respondent.

*No. 144. Argued November 26, 1973.—Decided December 21, 1973.*
(Also reported in 213 N. W. 2d 5.)

446

For the appellant there was a brief by *James R. Mattison* and *Becker, Kinnel, Doucette & Mattison,* all of Milwaukee, a reply brief by *James R. Mattison,* and oral argument by *James R. Mattison.*

For the respondent there was a brief by *James G. Howard* and *Binder, Zirbel & Howard,* all of Milwaukee, and oral argument by *Irving W. Zirbel.*

WILKIE, J. Four issues are raised on this appeal:

1. Did the trial court err in refusing to grant a motion for new trial on the basis of newly discovered evidence?

2. Did the allowance of testimony on an "undisclosed defense" prejudice the plaintiff's case?

3. Did the trial court err in refusing to give the requested instruction of the plaintiff?

4. Is the plaintiff entitled to a new trial in the interest of justice because the trial court proceeded on an erroneous view of the law?

1. *Newly discovered evidence.* Judgment was entered on the verdict on November 17, 1971. In January, 1972, the plaintiff sought a new trial on the basis of newly discovered evidence. The plaintiff claimed that he found a bill of sale executed by the defendant in some old files in his New York office. He explained his delay in dis-

covering the document by noting that he had several residences scattered across the country and kept records in several places.

The granting or denying of a motion for a new trial on the grounds of newly discovered evidence is within the sound discretion of the trial court.[1] The denial of the motion in this case was clearly not an abuse of discretion. As stated in *John Mohr & Sons, Inc. v. Jahnke:*[2]

". . . Rather than being newly discovered evidence, this seems to be evidence which could reasonably have been discovered and should have been secured by timely and proper preparation for trial. The motion for a new trial on newly discovered evidence cannot be used as a cure for inadequate preparation for trial. One seeking a new trial on this ground has a substantial burden to convince the trial court."

Here the plaintiff, at several points during the trial, had stated that any agreement of the parties was oral and that he had no receipt to show any payments had been made. He specifically testified that the defendant had requested a bill of sale but that one was never prepared. This certainly casts doubt on the authenticity of this purported bill of sale. The defendant also denied by affidavit that the signature on the document was hers. These suspicious circumstances are in addition to the fact that it appears that the plaintiff was negligent in not finding a document which was in existence during the entire duration of the trial and allegedly in his files. The plaintiff was able to produce checks from 1965 but not the "key" document.

2. *Undisclosed defense and prejudice to plaintiff.* The plaintiff contends that the court committed prejudicial error when it permitted the defendant to testify about a conversation between the parties in late spring or early

[1] *State v. Chabonian* (1971), 50 Wis. 2d 574, 185 N. W. 2d 289.
[2] (1972), 55 Wis. 2d 402, 407, 198 N. W. 2d 363.

summer of 1968. The defendant, in response to questions put by her defense attorney, testified that the plaintiff came to her home in person and that while there he said that the defendant would have to pay a certain amount of money for having received the tip to initially purchase the stock. She testified that the plaintiff said that the people in New York felt that she should pay for the privilege of getting in on the ground floor. The plaintiff's counsel objected and, out of the presence of the jury, told the court he felt this was a "special defense" not pleaded by the party. Counsel pleaded surprise and said he had no information leading to this "defense." The trial judge responded "I don't consider that a special defense."

The trial court was clearly correct. The testimony about a demand for payment for a stock tip is in no way an affirmative defense to this action which had to be pleaded in the answer. It does not constitute a counter-claim. It could even be considered irrelevant or immaterial to the issues in this case, but the plaintiff's counsel did not make that objection. The defendant was merely giving her version of a conversation which had been testified to by the plaintiff. Plaintiff's attorney asked the defendant on the stand if she recalled asking the plaintiff to become a joint venturer for 25 percent of the profits in all her investments. She said no, she did not recall that. On cross-examination, defendant's attorney asked the plaintiff if it was not true that he felt he was entitled to some of the profits because of his very helpful and lucrative tip about the Heritage stock. The plaintiff denied this. On redirect, the plaintiff said that the defendant had offered to give him 25 percent of the profit on the sale of shares which she had bought at a later date but that he had declined the offer, telling her to pay off her bank loan. Thus it clearly appears that the

testimony objected to was the defendant's version of conversations testified to by the plaintiff.

The plaintiff argues that this testimony was prejudicial to the plaintiff because of the bad light it shed on him. In the plaintiff's brief it is stated:

"The unpleaded attack on the plaintiff's integrity was cleverly prejudicial. It had been brought out before the jury that plaintiff's primary business involved his major stock ownership of Lawton Publications, a racing sheet published in New York and distributed to various tracks around the country. Thus plaintiff was characterized as a horse race tout and as a stock tipster who demanded a share of the profits of his tips."

In the plaintiff's reply brief, counsel outlines what he considered the clever attack on the plaintiff's integrity. It is said to have started with references to the plaintiff's connection to a handicap sheet and ended with a tie-in to stock tipping. Plaintiff's counsel did not at any time interpose any objection to the testimony which he now claims prejudiced his client in the eyes of the jury. It is necessary to make immediate objection and to move for a mistrial if the issue is misconduct of counsel.[3]

Of course this court can grant a new trial in the interest of justice even though no objections were made if it feels that for any reason justice has probably miscarried. No miscarriage of justice has resulted here. Just because a party is connected with horse wagering does not mean that that party cannot get a fair trial. Here, plaintiff's own counsel initially brought the plaintiff's business enterprise to the attention of the jury. His questions developed the history of the Lawton handicap sheet in some detail including the fact that it was started by a New York judge. It was explained that the plaintiff was a majority stockholder in the company which published the handicap sheet and that the com-

---

[3] *Kink v. Combs* (1965), 28 Wis. 2d 65, 72, 135 N. W. 2d 789.

pany kept statistical profiles for many other sports which information was subscribed to by magazines and sportscasters. This is hardly a prejudicial picture of the plaintiff's business connections.

On cross-examination of the plaintiff, defendant's counsel elicited the information that the plaintiff had told many other people to buy Heritage Industrial Corporation stock. Later the defendant testified that the plaintiff indicated he felt she should pay for the "tip" he had given her. Plaintiff's counsel claims this "cleverly extended the doctrine of horse handicapper to that of stock tipster." We fail to see anything inherently prejudicial in this information.

3. *Error in instructions.* The plaintiff claims error in the trial court's failure to instruct the jury on the burden of proof in accordance with the instructions requested by the plaintiff. The plaintiff's requested instruction for the first special verdict question clearly asked the court to instruct on two burdens of proof. The first question in the special verdict was: "Did the plaintiff, Clem E. Sheldon, purchase 250 shares of Heritage stock from the defendant, Shirley N. Singer, in January of 1967?" The instruction given by the trial court correctly placed the burden on the plaintiff who was urging an affirmative answer. The plaintiff had the burden of proving that he acquired the shares of stock by purchase. The defendant had no burden to convince the jury to answer "No." An instruction which implied that there was more than one burden of proof would clearly have been erroneous.[4]

4. *Erroneous view of the law.* The plaintiff urges this court to grant a new trial in the interest of justice because the trial court proceeded on an erroneous theory of law. This point is in large part a reargument of the

---

[4] *Papke v. Haerle* (1926), 189 Wis. 156, 207 N. W. 261; *Kausch v. Chicago & M. E. R. Co.* (1921), 173 Wis. 220, 180 N. W. 808.

contention that erroneous instructions were given by the trial court.

The plaintiff feels that his possession of the stock certificates and assignments separate from certificates is conclusive proof of sale. He thus feels that in essence the defendant's denials and counterclaim amount to an attempt to rescind a contract of sale. Thus he feels he was entitled to a "Yes" answer on question one of the special verdict unless the defendant could meet the higher civil burden of proof. The plaintiff contends in his reply brief: "What was accomplished by the judgment in this case was the rescission of a sale without the defendant being subjected to any burden of proof whatsoever, and a substantial miscarriage of justice has resulted."

The plaintiff apparently feels that the certificates and stock powers are documentary proof of sale and that therefore the burden is on the defendant to show that her signature was obtained by fraud. However, the certificates and stock powers are not a contract of sale or a bill of sale. The possession of the certificates and stock powers did clothe the plaintiff with apparent good title and he could have transferred the certificates to an innocent purchaser for value. As between the plaintiff and defendant, however, there is no evidence of how the plaintiff came to possess the instruments. The defendant could have made a gift of the certificates to the plaintiff, or given them to him in trust, or loaned them to him for a specific purpose (as the defendant contends is the case here) or sold them to the plaintiff (as the plaintiff contends is the case here), or they could even have been stolen. The plaintiff stated several times during the course of the trial that the agreement of the parties was completely oral and that there were no receipts for any payments. Thus it was the plaintiff's burden to prove his claim that he acquired the instruments by purchase.

The trial court indicated to both counsel that he felt a single question would dispose of the issue. If the jury agreed that the plaintiff had purchased the stock, he would be entitled to receive the 1,380 shares now held by the defendant. If the jury was not convinced that there was a sale, the plaintiff would have to return the 600 shares in his possession to the defendant. The court asked if the attorneys had any suggested special verdict questions. Counsel for plaintiff answered "No," and counsel for defendant did submit a number of written questions. At no time did the plaintiff object to this formulation, although the plaintiff did object to the submission of a question on exemplary damages based on the defendant's counterclaim.

The court then instructed the jury that the defendant had to meet the higher civil standard of proof to receive an affirmative answer to question number two, which asked the jury to find that the inducements of the plaintiff to obtain possession of the stock were malicious or in wilful or reckless disregard of the rights of the defendant. The jury answered "No."

Perhaps the jury should have been asked first whether misrepresentations were made. However, the plaintiff has waived any objection he might have had to the special verdict because he never made a written or oral request for the inclusion of any particular question.[5] The form of the special verdict is discretionary with the trial court and will not be interfered with as long as the material issues of fact are covered by appropriate questions.[6]

*By the Court.*—Judgment affirmed.

[5] *Leiske v. Baudhuin Yacht Harbor* (1958), 4 Wis. 2d 188, 193, 89 N. W. 2d 794.

[6] *Gilbert v. United States Fire Ins. Co.* (1970), 49 Wis. 2d 193, 181 N. W. 2d 527.