FITZGERALD, Plaintiff and Respondent, v. BADGER STATE MUTUAL CASUALTY COMPANY and others, Defendants and Respondents: DRUML COMPANY, INC., Defendant and Appellant: CHICAGO & NORTH WESTERN RAILWAY COMPANY, Defendant.

*No. 441. Argued February 4, 1975.—Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 444.)

For the appellant there were briefs by *Hayes & Hayes* of Milwaukee, and oral argument by *Tom E. Hayes.*

For the defendants-respondents there was a brief and oral argument by *Alan Shafrin* of Milwaukee.

For the plaintiff-respondent there was a brief by *Peregrine, Marcuvitz, Cameron, Peltin, Hersh & Lensky, S. C.* of Milwaukee, and oral argument by *Howard B. Schoenfeld* and *Alan Marcuvitz,* both of Milwaukee.

WILKIE, C. J.   Two issues are raised in this lawsuit for damages to a guest, the plaintiff-respondent here, growing out of an automobile accident on December 26, 1969, when the car she was riding in, driven by defendant-respondent Virgil C. Csida, and insured by the defendant-respondent, Badger State Mutual Casualty Company, collided with a temporary railroad trestle (being used by the defendant, Chicago & North Western Railway Company) at a highway construction site at which work was being done by the defendant-appellant, Druml Company.

The defendant-appellant was under contract to the state of Wisconsin highway department to widen Silver Spring Drive in the city of Glendale in Milwaukee county and to rebuild the bridge supporting the tracks of the Chicago & North Western Railway Company at North 16th Street.   At this point the road narrowed from four lanes to two, allowing for one lane of traffic in each direction under the overpass.   A temporary trestle consisting of a cluster of wood piles was erected by Druml to support the track during the construction.   As the principal contractor, Druml was responsible for keeping the road open for traffic, maintaining the surface of the road, barricading the construction site, and lighting the area.

The first issue is whether there is credible evidence to support the finding of the jury that defendant Druml was negligent with respect to maintaining a place of employment as safe as the nature of the place would reasonably permit.

It is first necessary to explain how the accident happened.   On December 26, 1969, at about 6:45 p.m.,

Lynette Fitzgerald and Virgil Csida were traveling in the west bound lane of Silver Spring Drive. At the time it was dark, a light snow was falling, and the road was wet and slippery. Both Csida and his passenger testified that there were no warning devices of any kind where the highway construction was taking place. Csida also testified that he was traveling at about 20 to 25 miles per hour, that he did not remember seeing the trestle, and that the car seemed to pull to the left just prior to the collision. His passenger testified that she felt the wheel on her side "go down" into a ditch or hole. Csida had driven through the area before and had noticed there was construction work going on but had not noticed the extent of the work.

Druml introduced evidence to show that there were barricades and warning signs.

In a special verdict the jury found causal negligence on the part of the passenger, Csida and Druml. They apportioned this negligence as five percent to the plaintiff-passenger, 65 percent to Csida, and 30 percent to Druml. Total damages were assessed at $55,282.75. On motions after verdict, the trial court reduced the damages to $54,082.75 and affirmed the verdict in all other respects. It dismissed the action as against Chicago & North Western Railway.

The first major contention made by Druml on appeal is that there is insufficient credible evidence to support the jury finding of negligence on the part of Druml.

Before considering the sufficiency of evidence, it is first necessary to consider Druml's claim that it was prejudiced by the trial court's ruling against the admissibility of testimony regarding construction safety standards promulgated by the federal highway commission, and evidence concerning compliance with such standards. We do not reach the question of admissibility because Druml did not lay a proper foundation for the

introduction of such evidence. Druml did not make an offer of proof and the record even indicates an apparent abandonment of the line of questioning by Druml.

In this automobile accident case, the primary contention of the plaintiff was that Druml, as the construction contractor, violated sec. 62.15 (11), Stats., which provides:

"(11) STREET OBSTRUCTION. All contractors doing any work which shall in any manner obstruct the streets or sidewalks shall put up and maintain barriers and lights to prevent accidents, and be liable for all damages caused by failure so to do. All contracts shall contain a provision covering this liability, and also a provision making the contractor liable for all damages caused by the negligent digging up of streets, alleys or public grounds, or which may result from his carelessness in the prosecution of such work."

The jury found in the affirmative as to the causal negligence of Druml and this finding was approved by the trial court which stated:

". . . The jury apparently concluded, and I think we must recognize their right to do so, that Druml did not maintain these premises in the condition as reasonable as the nature of the premises would permit and that because of this the failure to maintain was a substantial factor in producing the accident.

"In order for the Court to change that answer from 'Yes' to 'No,' I would have to say that all of the testimony adduced by the plaintiff on the condition of this construction site as it relates to a failure of maintenance on Druml's part was inherently incredible and could in no way support a finding by the jury that it was causal. This we cannot do."

The narrow question here becomes whether, viewing the evidence most favorably to the plaintiff-respondent Fitzgerald, there is any credible evidence in the record to support the finding that defendant-appellant Druml was negligent in failing to make the construction site as safe

as the nature of the employment would reasonably permit.[1]

There was credible evidence for the jury to so conclude and to find that all three elements necessary to liability under the safe-place statute [2]—the existence of a hazardous condition, that such condition caused the injury and that the employer knew or should have known of the condition—were present.

Defendant seeks to discredit plaintiff's and Csida's testimony by emphasizing discrepancies regarding the number of drinks consumed by them on the day of the accident and the length of time spent at a friend's house and a tavern. Defendant claims that plaintiff's testimony concerning the absence of warning signs is incredible since she testified that there was a single lane for both east and west traffic traveling through the underpass. Respondent concedes that this testimony is inaccurate. But the credibility of witnesses and the weight to be given their testimony are to be determined by the jury.[3] Examining the testimony as a whole there is sufficient credible evidence here to support the conclusion that a hazardous condition existed at the construction site at the time of the accident.

Defendant also argues that the case of *Skybrock v. Concrete Construction Co.*[4] controls the issue of its negligence. In *Skybrock* the plaintiff was injured when she fell while crossing through an area where the defendant construction company was widening the street and in-

---

[1] *Carr v. Amusement, Inc.* (1970), 47 Wis. 2d 368, 177 N. W. 2d 388; *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 139 N. W. 2d 48.

[2] *See: Boutin v. Cardinal Theatre Co.* (1954), 267 Wis. 199, 64 N. W. 2d 848; *Rosenthal v. Farmers Store Co.* (1960), 10 Wis. 2d 224, 102 N. W. 2d 222.

[3] *Anderson v. Deerwester* (1960), 9 Wis. 2d 428, 101 N. W. 2d 640.

[4] (1969), 42 Wis. 2d 480, 167 N. W. 2d 209.

stalling a new curb and sidewalk. In reversing the jury apportionment of 75 percent negligence on the part of the defendant, this court stated:

"Under the safe place statute, the defendant was to provide such freedom from danger to the safety of frequenters as *the nature of the place* of employment would *reasonably* permit. Defendant was not expected to guarantee the safety of persons who chose to cross the construction site. The nature of the place was a road construction project and naturally produced some dangers or hazards. That is why the road was closed to pedestrian and vehicular traffic. Defendant had no duty to put a red flag on every potential hazard that was present or to fence off the entire area. The defendant did provide a safe alternate route. The duty set by the safe place statute 'is not breached merely because the place could be made safer.' *De Marco v. Braund* (1966), 30 Wis. 2d 675, 680, 681, 142 N. W. 2d 165." [5]

Defendant's reliance on *Skybrock* is misplaced. The central determination in that case was not whether there was any credible evidence to support the jury's conclusion that defendant was negligent. Rather the court held that plaintiff's negligence in failing to use an alternative route available to her was equal to or greater than the negligence of the defendant and that the defendant did not acquiesce in plaintiff's choice to walk through the area. The fact that in *Skybrock* the plaintiff resided in close proximity to the construction area and had full knowledge of it also serves to distinguish that case from the instant situation.

In spite of these differences defendant insists that *Skybrock* mandates reversal since plaintiff and Csida were aware that construction was going on in the area. This claim of knowledge is based on plaintiff's testimony that just prior to the accident she noticed the construction area as she looked out the side window and that

[5] *Id.* at page 488.

she saw a "yellow sign" immediately before the collision, and Csida's statement that he knew construction work was going on but not the extent of the work.

In another case dealing with sec. 62.15 (11), Stats., this court held:

"Plaintiff's knowledge of the existence of the excavation and his attempt to cross it, however, does not as a matter of law preclude recovery if he did not realize or appreciate the danger and if it was not reasonable to expect that he would realize and appreciate the danger. The rule is stated in 63 C. J. S., *Municipal Corporations*, pp. 200, 201; sec. 850b:

" 'A traveler is not precluded from recovery because he knew of the defect or obstruction, where his knowledge was remote, or imperfect, or insufficient to give a full appreciation of the danger, as where he knew of the generally defective condition of the way, but had no knowledge of the particular defect which caused the injury. In other words, knowledge of the defect or obstruction, without adequate knowledge of the danger in using the way, is insufficient to charge the traveler with contributory negligence. . . .' " [6]

While plaintiff-respondent Fitzgerald and Csida were generally aware of the construction area there is no evidence that they knew of the existence of the chuckholes or that they appreciated the extent of the danger. As stated in *Burke v. Poeschl Brothers, Inc.*:

". . . Merely because the plaintiff attempted to cross the excavation does not render him contributorily negligent as a matter of law and, consequently, the question was properly left to the jury." [7]

There must also be credible evidence that the hazardous condition caused the injuries complained of. Csida testified:

---

[6] *Burke v. Poeschl Brothers, Inc.* (1968), 38 Wis. 2d 225, 233, 156 N. W. 2d 378.

[7] *Id.* at pages 234, 235.

"Well, it felt as though my car, when I braked, it's like when I hit—when I hit the brake it felt as though my car just pulled over to the left, slightly to the left and then there was an impact and from there on—"

Plaintiff Fitzgerald stated as follows:

". . . Tony stepped on his brakes and the wheel on my side of the car, I felt it go down and then the last thing I remember is this big post or something in front of me."

". . . It felt like the tire on the passenger side of the car in the front went down into a ditch or a hole or something."

On the basis of this testimony, and the statements of the other witnesses regarding the presence of chuckholes, the jury answered the question of causation affirmatively. In analyzing the jury's verdict the trial court stated:

". . . If this case had been tried to the Court, I frankly would have wrestled with that problem of causation . . . .

". . .

"The Court must conclude that the testimony . . . provided a sufficient factual basis from which the jury could find causation.

". . .

". . . Cases of doubtful causation must be left to the jury. The jury has answered the question 'Yes,' and I am not going to change the answer."

Where reasonable men might differ on the question of causation, it is proper that the question is one for the jury.[8] It is on this factor—that reasonable men could well differ on the question of causation—that the instant case is to be distinguished from *Rosenthal v. Farmers Store Co.*,[9] which case defendant contends is controlling.

---

[8] *See: Hoeft v. Milwaukee & Suburban Transport Corp.* (1969), 42 Wis. 2d 699, 711, 168 N. W. 2d 134; *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. 2d 620, 629, 139 N. W. 2d 595.

[9] (1960), 10 Wis. 2d 224, 102 N. W. 2d 222.

In *Rosenthal* the plaintiff, while shopping at defendant's grocery store, slipped and fell, fracturing her hip. The plaintiff testified there that she looked for a banana peel but saw only " 'something black' which 'looked shiny.' " However, she was unable to state whether it had anything to do with her fall. This court found no evidence to prove the existence of a defect or hazardous condition, no evidence that the "something black" caused the fall and no evidence that if a hazardous condition did exist and did cause the fall that it existed for a sufficient length of time to charge defendant with notice of its existence. The action of the trial court in granting defendant's motion for a nonsuit and dismissing plaintiff's complaint was affirmed. In the instant case there is not such a total absence of evidence.

There is also sufficient credible evidence to conclude that the defendant had notice of the conditions prevalent at the accident site. In *Boutin v. Cardinal Theatre Co.*[10] this court stated:

". . . the [safe-place] statute does not make an owner or employer the insurer of the safety of the frequenter and his duty to repair or maintain does not arise until he has at least constructive notice of the defect. To have notice of a defect, of course the defect must exist and, in order to impose liability, it must exist for so long a time that the party charged with responsibility by the safe-place statute has opportunity not only to discover it but to remedy the situation and avoid the accident."

In the present case the chief dispatcher for the Glendale police department testified to receiving complaints regarding the lack of warning devices from both police officers and private citizens throughout the month of December and to notifying defendant of these complaints. While the record reveals that the dispatcher failed to record the call to the defendant in the log and that the

[10] *Supra,* footnote 2, 267 Wis. at page 204.

president of defendant corporation denied receiving any such call, this did not preclude a jury finding that defendant had actual notice of the conditions or that the hazardous conditions existed for an appreciable length of time so as to constitute constructive notice.

The second issue presented on this appeal is whether the Wisconsin doctrine of comparative negligence should be extended so that a co-tort-feasor could not be held liable for more than the sum which represented his percentage of causal negligence. Specifically, it is contended that since the jury awarded damages in excess of $50,000, and apportioned only 30 percent of the causal negligence to Druml, the liability of Druml should be limited to approximately $15,000. To adopt the defendant-appellant's position here would require this court to abandon the common-law doctrine of joint and several liability among co-tort-feasors. We have reviewed this question extensively in *Chille v. Howell,*[11] where the appellant made a similar contention urging reconstruction of sec. 895.045, Stats., the comparative-negligence statute, as applied to comparison of negligence in multiple defendant cases. The apportionment of negligence in *Chille* was similar to that in the case at bar. The plaintiff automobile passenger was found to be five percent negligent, the defendant driver 75 percent negligent, and the appellant, the driver of the other vehicle, 20 percent negligent. The court there rejected appellant's argument, stating:

"In *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 6, 114 N. W. (2d) 105, wherein the rule of contribution between tort-feasors who sustain common liability because causal negligence was changed to reflect liability in proportion to respective fault, the court was careful to point out:

" 'We make it plain at the outset that this refinement of the rule of contribution does not apply to or change the plaintiff's right to recover against any defendant tort-

---

[11] (1967), 34 Wis. 2d 491, 149 N. W. 2d 600.

feasor the total amount of his damage to which he is entitled.'

"The appellants' counsel does demonstrate, by way of hypothetical illustrations, instances where one tort-feasor is required to pay all the claimants' recoverable damages, when the other tort-feasor is uninsured and judgment proof, even though causal negligence attributable to him is relatively minor.

"The appellants urge that in this instance where recovery against Howell is impossible or improbable that Chille's negligence should be compared to Grimstad as a whole which would reduce Chille's recovery by 5/25 so as to permit a recovery of 80 percent of the amount awarded rather than 95 percent as ordered by the trial court.

"The construction of the comparative-negligence statute as announced in *Walker v. Kroger Grocery & Baking Co.* [(1934), 214 Wis. 519, 252 N. W. 721], has been the law since 1934; several of our cases have reaffirmed the rule based upon the ancient common-law concept of joint and several liability of joint tort-feasors. We are not persuaded it should be changed." [12]

No new argument is advanced here warranting our modification or reversal of *Chille.*

*By the Court.*—Judgment affirmed.

[12] *Id.* at page 500.