TOPP, and wife, Appellants, v. CONTINENTAL INSURANCE COMPANY, and others, Defendants: AMERICAN STATES INSURANCE COMPANY, and another, Respondents: HUNT, d/b/a Hunt Construction Company, and another, Third-Party Defendants.

*No. 76–018. Argued May 3, 1978.—Decided June 6, 1978.*
·(Also reported in 266 N. W. 2d 397.)

For the appellants there were briefs by *Daniel G. Sandell*, and *Johnson, Bieber & Swingen* of Madison, and oral argument by *Mr. Sandell*.

For the respondents there was a brief by *Bruce K. Kaufmann*, and *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison, and oral argument by *Bruce K. Kaufmann*.

ABRAHAMSON, J.   At approximately 9:00 p.m. on January 11, 1973, Robert Topp got out of a taxicab on West Badger Road in front of Mr. V's tavern-restaurant. As Topp walked across the gravel shoulder of Badger Road to the blacktop parking lot in front of Mr. V's, he apparently tripped or slipped on a ridge created by the height disparity between the edge of the blacktop parking lot and the abutting gravel strip. Topp fell to the ground, fracturing his arm.

Topp and his wife (hereinafter Topp) subsequently brought action against James Vitale, Sr. (hereinafter Vitale), owner of the property upon which Mr. V's was located, and against Joseph Vitale and James Vitale, Jr., owner-operators of Mr. V's.

Vitale impleaded the Town of Madison, on the theory that the Town rather than Vitale had control over the gravel shoulder of Badger Road, and Ervin Hunt, the contractor who installed the blacktop parking lot.

Prior to trial, Topp settled his claim against Joseph Vitale and James Vitale, Jr. The trial court dismissed the defendant Town of Madison and the defendant Irvin Hunt from the action on the merits, with prejudice. The dismissal of the third party defendants was not appealed.

The special verdict answers returned by the jury found that Topp fell on property over which Vitale exercised control, but that Vitale had not been negligent with respect to his maintenance of the property. Judgment was entered on the verdict dismissing Topp's complaint. We affirm.

Topp contends that the trial court committed prejudicial error by submitting its special verdict question No. 5 to the jury. This question, he argues, failed to present to the jury the crucial issue of Vitale's duty under sec. 101.11(1), Stats., the safe place statute,[1] to maintain and repair his property.

Special verdict question No. 5 inquired:

"Question No. 5: At the time of the accident and immediately prior thereto, was the defendant James Vitale, Sr. negligent with respect to *maintaining the parking lot in a condition as structurally safe* as the nature thereof would reasonably permit?" [Emphasis added.]

Topp argues on appeal that the evidence was undisputed that the blacktop of the parking lot had been properly installed, that the blacktop was flush with the abutting gravel at the time of installation but not at the time of Topp's fall, that the blacktop was still structurally sound at the time of trial, and that the evidence established that proper repair or maintenance was required to

---

[1] Sec. 101.11(1), Stats., provides:

"Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe."

keep the surface of a blacktopped parking lot flush with abutting gravel. A jury question was therefore presented, asserts Topp, with respect to maintenance and repair rather than with respect to construction.

The trial court properly instructed the jury that the owner of a place of employment has the duty to "so construct, repair or maintain such place of employment as to render the same safe."[2] Topp contends that special

[2] The jury was instructed, in pertinent part:

"In addition, the Vitales, both the father who's referred to in three of the questions and the two sons, who are referred to in three of the questions, have a duty to comply with the provisions of the Wisconsin Statutes which provide, in part: (Reading)— That every employer shall furnish employment that shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. (End of reading.) That pertains to the two sons who are referred to in the first three questions. The rest of the Statute provides as follows: (Reading) Every employer and every owner of a place of employment, or a public building now or hereafter constructed shall so construct, repair, or maintain such place of employment as to render the same safe. (End of reading.)

"The premises in question at the time in question was a place of employment and the Plaintiff was lawfully on the premises at the time in question and was a frequenter thereof.

"Safe or safety as used in the Statutes and in this instruction do not refer to absolute safety.

"The section of the Wisconsin Statutes provide that the term 'safe or safety' as applied to the place of employment means such freedom from danger to the life, health, safety, or welfare of employees or frequenters as the nature of employment or place of employment will reasonably permit.

"The Vitales, again in two categories, were not required to guarantee the safety of each frequenter who used the premises, but were required to maintain such premises as safe as the nature of the place would reasonably permit.

verdict question No. 5 should have been framed in conformity with the trial court's instruction concerning the duty of an owner of a place of employment to maintain and repair his premises. Topp asserts that question No. 5 dealt with construction rather than maintenance and that the trial court "literally tied the jury's hands by restricting [question No. 5] with the phrase 'structurally safe.'"

We do not agree that it was prejudicially erroneous for the trial court to have used the term "structurally safe" in the special verdict. This court has frequently stated that the form of the special verdict rests in the discretion of the trial court, and the court's chosen form will not be rejected unless the inquiry, taken with the applicable instruction, does not fairly present the material issues of fact to the jury for determination. *Carson v. Beloit,* 32 Wis.2d 282, 287, 145 N.W.2d 112 (1966); *Sheldon v. Singer,* 61 Wis.2d 443, 453, 213 N.W.2d 5 (1973); *Wirsing v. Krzeminski,* 61 Wis.2d 513, 523, 213 N.W.2d 37 (1973).

"In determining whether the Vitales premises were as free from danger as its nature would permit, you'll consider the quality of the construction and maintenance of the premises bearing in mind the nature of the business carried on there and the manner in which that business is customarily carried on for the manner in which an ordinary careful and prudent man might reasonably anticipate it would be carried on.

"To find the Vitales or either group of them negligent with respect to repair or maintenance of the premises as safely as the nature of the place reasonably permitted, you must find that the Vitales, or either of them, were either warned by actual notice of the alleged defect in time to take reasonable precaution to remedy the situation, or that they were warned by constructive notice of the alleged defect because it had existed for such a length of time before the accident that the Vitales, either of them in groups, in the exercise of reasonable diligence—this includes the duties of inspection—should have secured it in time to take reasonable precautions to remedy the situation."

Structurally means "in regard to the structure." Structure is defined as something constructed or built; something made up of more or less interdependent elements or parts. Webster's Third New International Dictionary, Unabridged (1961). The junction of the edge of the blacktop and the abutting gravel is thus a part of a "structure." The phrase "structurally safe" was neither incorrect nor misleading.[3] Question No. 5 inquired whether Vitale had been negligent with respect to *maintaining* the parking lot in a "structurally safe" condition. The question properly understood asked whether Vitale had been negligent in maintaining the junction of the edge of the blacktop and the edge of the gravel in a condition as safe as the nature thereof permitted. There is no merit to Topp's contention that the effect of question No. 5 was to "negate the evidence . . . regarding the *maintenance* deficiency."

By motions after verdict, Topp asked the trial court (1) to change from "no" to "yes" the jury's answer to the question whether Vitale had been negligent with respect to maintaining the parking lot, and (2) to insert

---

[3] Although the pleadings in this case raised, *inter alia*, the issue of the Vitales' failure to snowplow, sand and salt their property, the evidence presented at trial was directed toward establishing that Topp's fall had been caused by a raised ridge of blacktop at the edge of the parking lot. Since there was insufficient evidence to warrant asking the jury whether accumulated ice and snow had substantially contributed to Topp's injury, the trial judge properly directed the question of maintenance away from plowing and sanding by asking whether Vitale had been negligent with respect to maintaining the parking lot in a condition as *structurally safe* as the nature thereof would reasonably permit.

It is the duty of the trial judge to eliminate from the special verdict questions raised in the pleadings but not presented by the evidence. *Wisconsin Builders, Inc. v. General Ins. Co.*, 65 Wis.2d 91, 104, 221 N.W.2d 832 (1974); *Dahl v. K-Mart*, 46 Wis.2d 605, 609, 176 N.W.2d 342 (1970).

"yes" in answer to the question whether Vitale's negligence had been a cause of Topp's accident.

Because there was "no evidence to contradict the evidence that the blacktop/gravel border was in disrepair and in need of maintenance," argues Topp on appeal, the jury's finding on the issue of liability "was contrary to the evidence and law." Topp claims that it follows that the trial court erred in refusing to change the answers in the verdict on the issue of liability.

The rules governing when it is proper for a trial court to change the answer of a jury verdict are well settled. If there is any credible evidence which, under any reasonable view, fairly admits of an inference that supports the jury's finding, the trial court has no authority to change the jury's answer. Only if the record is devoid of evidence that would sustain the verdict, or if the evidence is incredible, is it within the prerogative of the trial court to substitute its view of the evidence for that of the jury. In determining whether there is any credible evidence to support the jury's verdict, the evidence must be viewed in the light most favorable to the jury's verdict. *Maichle v. Jonovic,* 69 Wis.2d 622, 626, 230 N.W.2d 789 (1975).

Topp appears to assert that the uncontradicted evidence that the gravel shoulder of West Badger Road was not flush with the blacktop of Mr. V's parking lot was a sufficient basis for holding Vitale liable under the safe place statute, sec. 101.11(1), Stats., as a matter of law. However, there are three elements necessary to liability under the safe place statute: "the existence of a hazardous condition, that such condition caused the injury, and that the [owner or] employer knew or should have known of the condition." *Fitzgerald v. Badger*

*State Mut. Cas. Co.,* 67 Wis.2d 321, 326, 227 N.W.2d 444 (1975).

All defects are not necessarily "unsafe" within the meaning of sec. 101.11(1), Stats. Although the statute imposes a duty more stringent than the duty of ordinary care, the owner or employer is not an insurer. *Gross v. Denow,* 61 Wis.2d 40, 46, 212 N.W.2d 2 (1973). Whether or not a place is safe depends upon the facts and conditions present, *DeMarco v. Braund,* 30 Wis.2d 675, 677, 142 N.W.2d 165 (1966), and the use to which the place is likely to be put. *Gross v. Denow, supra,* at 47. The duty set by the statute is not breached merely because the place could be made safer, *Fitzgerald v. Badger State Mut. Cas. Co.,* 67 Wis.2d 321, 327, 227 N.W.2d 444 (1975), and the mere fact that an accident has happened does not demonstrate that the place was unsafe. *Kaiser v. Cook,* 67 Wis.2d 460, 464, 227 N.W.2d 50 (1975). The trial court's instructions, which Topp does not challenge, permitted the jury to assess whether Vitale's premises were as free from danger as their nature would permit ". . . bearing in mind the nature of the business carried on, and the manner in which that business is customarily carried on, or the manner in which an ordinarily careful and prudent man might reasonably anticipate it would be carried on." The jury was free to have concluded that customers of the restaurant-tavern would ordinarily enter the building directly from the parking lot, rather than directly from Badger Road, and that it was not reasonably to be anticipated that the owner or employer of a restaurant-tavern whose entrance opened onto the blacktop parking lot should constantly be on the alert to insure that the gravel shoulder of the adjacent highway was flush wtih the abutting blacktop.

There was also credible evidence from which the jury could have concluded that the gravel shoulder was low-

ered the morning of the accident by a snowplow. The safe place statute does not give rise to a duty to repair until the owner or employer has at least constructive notice of the defect. *Fitzgerald v. Badger State Mut. Cas. Co., supra,* 67 Wis.2d at 330. In *Boutin v. Cardinal Theatre Co.,* 267 Wis. 199, 204, 64 N.W.2d 848 (1954), this court stated that "[t]o have notice of a defect, of course the defect must exist and, in order to impose liability, it must exist for so long a time that the party charged with responsibility by the safe-place statute has opportunity not only to discover it but to remedy the situation and avoid the accident."

We conclude that there is credible evidence to support the jury's finding that Vitale was not negligent within the meaning of the safe place statute. The trial court properly denied Topp's motion that the jury's findings as to liability be changed.[4]

*By the Court.*—Judgment affirmed.

---

[4] In view of our holding, we need not reach several questions raised by Vitale, *e.g.,* whether the Town, rather than he, owned the gravel shoulder area, whether the Town or the tenants, rather than he, had the duty to maintain the gravel shoulder area.