Robert BAGNOWSKI† and Farmers Insurance Exchange, a foreign reciprocal inter-insurance exchange, Plaintiffs-Appellants,

v.

PREWAY, INC., a domestic corporation; The Travelers Insurance Company, a foreign stock corporation; David Zach and Transamerica Insurance Company, a foreign stock corporation, Defendants-Respondents.

Court of Appeals

*No. 86–0220. Submitted on briefs October 14, 1986.—Decided March 24, 1987.*

(Also reported in 405 N.W.2d 746.)

† Petition to review denied.

For plaintiffs-appellants there were briefs submitted by *Richard W. Zalewski* and *Edward G. Harris* of *Terwilliger, Wakeen, Piehler & Conway, S.C.,* Wausau.

For respondents Preway, Inc., and The Travelers Insurance Company, there was a brief submitted by *James A. Wade* of *Johnson, Killen, Thibodeau & Seiler, P.A.,* Duluth, MN.

For respondents David Zach and Transamerica Insurance Company, there was a brief submitted by *Ronald L. Piette* and *Michael T. Steber* of *Piette, Knoll & Nelson, S.C.,* Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Robert Bagnowski, a homeowner, appeals a judgment on the verdict in favor of Preway, Inc., a heating unit manufacturer, and David Zach, the former homeowner who installed one of Preway's units. Bagnowski's suit alleged that Preway had negligently designed, and Zach had negligently installed, a chimney that caused severe fire damage to his home.

Bagnowski asserts that the trial court improperly instructed the jury on the standard of conduct by which Zach should be judged. Bagnowski also claims that the trial court abused its discretion when it ordered an eight-week adjournment before the last day of trial, allowed a surprise defense witness to testify after the adjournment but denied a continuance to allow Bagnowski to be present to rebut that witness' testimony, refused to sequester a corroborating witness, and allowed a fire fighter's hearsay testimony.

Because Zach's alleged negligence occurred in the course of a private home building project, the trial court properly refused to hold him to the standard of a commercial builder-vendor. We also reject Bagnowski's other contentions and therefore affirm.

In 1974, Zach, then a part-time electrician, contracted with a professional builder to construct his home. The contractor did most of the carpentry work, while Zach, with the help of other craftsmen, his father, and several friends, completed the finishing

244

work. Zach also installed the metal Preway fireplace and chimney. He used the heating unit intermittently throughout the next four years, then sold his house to a Mr. Krueger, who in turn sold the home to Bagnowski in 1980.

The following year, Bagnowski replaced the Preway fireplace with a Fisher woodburning stove. Bagnowski left the Preway chimney intact, but added a non-Preway connector pipe between the Fisher stove and the existing Preway chimney. The Bagnowskis used the stove approximately two to three times a week during the following two years, until the house caught fire. Bagnowski brought suit alleging, among other things, that Zach negligently installed the chimney pipe where it passed through the basement wall.

At the close of the evidence, Zach sought and received special verdict questions and instructions that held him responsible only for defects that he knew, or reasonably should have known, existed when he sold his home. Bagnowski, on the other hand, requested but was denied a special verdict question, and a related instruction, judging Zach by a standard of ordinary care as a builder-vendor. The jury returned a verdict finding Bagnowski 100% negligent and Zach and Preway not causally negligent.

The form of a special verdict rests within the discretion of the trial court. *Topp v. Continental Ins. Co.,* 83 Wis. 2d 780, 785, 266 N.W.2d 397, 401 (1978). So, too, does the language of jury instructions. *Meurer v. ITT Gen. Controls,* 90 Wis. 2d 438, 448, 280 N.W.2d 156, 162 (1979). We will reject neither verdict questions nor related instructions if the former "present the material issues of fact to the jury for determina-

tion," *Topp,* 83 Wis. 2d at 785, 266 N.W.2d at 401, and the latter "fully and fairly inform [] the jury of the rules and principles of law applicable to the particular case." *Meurer,* 90 Wis. 2d at 449, 280 N.W.2d at 162 (quoting *Webb v. Wisconsin South. Gas Co.,* 27 Wis. 2d 343, 351, 134 N.W.2d 407, 412 (1965)).

The trial court put the following questions to the jury:

> *QUESTION NO. 5:*
> Did David Zach know or should he reasonably have known of any condition associated with the installation of the Preway chimney which involved an unreasonable risk of harm to property?
> . . . .
>
> *QUESTION NO. 6:*
> Answer this question only if you have answered Question No. 5 "Yes."
> Did David Zach realize or should he have realized the risk associated with any such condition?
> . . . .
>
> *QUESTION NO. 7:*
> Answer this question only if you have answered Question No. 6 "Yes."
> Was any such condition a cause of the fire at the Bagnowski residence?

The jury answered Question 5 in the negative and therefore did not answer Questions 6 and 7.

The instructions and verdict were derived from the Restatement (Second) of Torts, secs. 352 and 353 (1965). Section 352 provides that "a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition,

whether natural or artificial, which existed at the time that the vendee took possession."

Section 353 sets forth a limited exception to the rule of caveat emptor contained in sec. 352:

> (1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if
>
> (a) the vendee does not know or have reason to know of the condition or the risk involved, and
>
> (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

Bagnowski contends that the law controlling his claim is found in *Fisher v. Simon,* 15 Wis. 2d 207, 112 N.W.2d 705 (1961). We disagree because, unlike Zach, the defendant in *Fisher* was in the business of selling homes.

Fisher brought suit against the vendors for defects that appeared after Fisher occupied the house. The *Fisher* court found that "since defendants constructed the building as owners but with the intent to sell it upon completion, the situation is analogous to a manufacturer who constructs a chattel, not for his own use, but for sale to others." *Id.* at 216, 112 N.W.2d at 710. While acknowledging the modified rules of

caveat emptor contained in secs. 352 and 353,[1] *Fisher,* 15 Wis. 2d at 214, 112 N.W.2d at 709, the court concluded that it could "perceive of no public policy which would be promoted by relieving a builder-vendor from liability for damages caused by defective construction due to his failure to exercise ordinary care. As between the vendee and the builder-vendor, we deem it more equitable that the loss resulting from negligent construction, in a case of a latent defect, should be borne by the latter rather than the former." *Id.* at 216, 112 N.W.2d at 710.

In rejecting Bagnowski's contention, we conclude that Zach was not a builder-vendor. A builder-vendor is one "in the business of building ... homes ... upon land owned by him, and who then sells the houses, ... together with the ... land ... to ... the ... public." *Kirk v. Ridgway,* 373 N.W.2d 491, 496 (Iowa 1985) (quoting *Jeanguneat v. Jackie Hames Const. Co.,* 576 P.2d 761, 762 n. 1 (Okla. 1978)).

There is no indication that Zach was a builder-vendor. The undisputed facts are to the contrary.

---

[1] *Fisher's* reference is to secs. 352 and 353 of the first Restatement of Torts, vol. 2, at 961 and 962. In the Restatement (Second) of Torts, sec. 353 contains the additional phrases "has reason to know" and "should realize." According to the Reporter's Notes, these changes were made by analogy to those concerning lessors in sec. 358. Restatement (Second) of Torts, sec. 353, app. (1966). Restatement (Second) of Torts, sec. 358 comment d (1965), states the following about lessor liability:

> The liability of the lessor is not based upon his failure to exercise reasonable care to keep the land in safe condition but upon his concealment of or failure to disclose conditions which he realizes or should realize are likely to cause bodily harm to the lessee or others whom the lessee, in ignorance of the danger, invites or permits to enter the land.

Where the facts are undisputed, the question is one of law. *State v. Williams,* 104 Wis. 2d 15, 21–22, 310 N.W.2d 601, 605 (1981). Zach was not in the business of building homes for sale. He and his family lived in the home for four years before selling it to Krueger and moving to another town. Zach was merely a private homeowner-vendor.

Bagnowski also asserts that the trial court abused its discretion when it adjourned the trial for eight weeks prior to the final day of trial to accommodate the schedules of the court, jurors, parties, and counsel. Adjournments during the course of trial are discretionary with the trial court. *Allen v. Allen,* 78 Wis. 2d 263, 274–75, 254 N.W.2d 244, 250 (1977). While the jury's recollection of the early testimony would undoubtedly have been fresher had the trial been completed in a more timely manner, *see O'Brien v. Dane County,* 235 Wis. 59, 65, 292 N.W. 440, 442 (1940), and an eight-week adjournment seems most unusual, we cannot say that it was an abuse of discretion. The trial court articulated reasons that prompted the adjournment, and Bagnowski has failed to show significant prejudice. *See WPS v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981).

Bagnowski also objected to allowing Louis Francis, a Fisher stove dealer, to testify on the final day of trial, claiming that he was a surprise witness. Since Bagnowski referred to Francis in both his deposition and his trial testimony as the dealer from whom he bought the stove, his claim of surprise is questionable. The matter is waived in any event because Bagnowski made no objection to Francis' testimony until it was nearly completed. *See Terpstra v. Soiltest, Inc.,* 63 Wis. 2d 585, 596, 218 N.W.2d 129, 135 (1974).

■ Nor are we convinced that Bagnowski should have been allowed a continuance in order to rebut Francis' testimony. The trial court felt that Bagnowski's testimony would merely be repetitive and that cross-examination could be adequately conducted without Bagnowski. Bagnowski's counsel was given time to discuss Francis' testimony with his client by telephone. Moreover, the court permitted the jury to hear a stipulation stating that Bagnowski would testify, if present, that everything Francis said was incorrect. The trial court's denial of the continuance was not an abuse of discretion. *See Robertson-Ryan v. Pohlhammer*, 112 Wis. 2d 583, 587, 334 N.W.2d 246, 249 (1983).

While we agree with Bagnowski that the trial court erred by refusing to sequester a witness, James Giese, we hold that the error was harmless. Section 906.15, Stats., provides in part:

> At the request of a party the judge ... shall order witnesses excluded so that they cannot hear the testimony of other witnesses. ... This section does not authorize exclusion of ... (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

Sequestration of a witness upon a party's motion was formerly discretionary, *see Ramer v. State*, 40 Wis. 2d 79, 82–83, 161 N.W.2d 209, 210 (1968), but is now mandatory, except where a trial court decides that the witness is "essential to the presentation" of the cause, a factor not asserted here. The trial court's refusal to sequester Giese was therefore error. *See Krist*, 104 Wis. 2d at 395, 311 N.W.2d at 631.

■

The refusal to exclude Giese during Zach's testimony, however, was harmless error. Giese's statements were, for the most part, merely cumulative of Zach's testimony. Further, although Giese testified to some facts relevant to the cause of the fire, he acknowledged that he was not present when the hole for the chimney was made and did not testify concerning when and by whom the chimney mortaring was done. We cannot say that, but for the failure to sequester Giese, the jury's determination would have been different. *See Bentzler v. Braun,* 34 Wis. 2d 362, 374 n. 13, 149 N.W.2d 626, 633, n. 13 (1967).

■

We disagree that it was error to allow Fire Chief John Frantz to testify that a fire fighter told him that a woman, not identified in the record, had heard a roaring sound as she left the house. The statement was reasonably relied upon by Frantz in forming his expert opinion of the cause of the fire under sec. 907.03, Stats. Although the trial court allowed the woman's statement into evidence as a present sense impression of an unavailable witness under sec. 908.045(2), Stats.,[2] there is no evidence that she was unavailable. We approve the use of the statement, however, under another hearsay exception.

Section 907.03 provides:

---

[2]Section 908.045(2) provides:

A statement, not in response to the instigation of a person engaged in investigating, litigating, or settling a claim, which narrates, describes, or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which he was interested, and while his recollection was clear.

251

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The rationale behind the admissibility of hearsay statements from an expert is explained in McCormick on Evidence, ch. 3, sec. 15, at 40 (3d ed. 1984).

[An expert] is just as competent indeed to [judge the reliability of statements inadmissible as evidence] as a judge and jury are to pass upon the credibility of an ordinary witness on the stand. If the statements, then, are attested by the expert as the basis for a judgment upon which he would act in the practice of his profession, it seems that they should ordinarily be a sufficient basis even standing alone for his direct expression of professional opinion on the stand, and this argument is reinforced when the opinion is founded not only upon reports but also in part upon the expert's firsthand observation. The data of observation will usually enable the expert to evaluate the reliability of the statement.

The woman's statement, though hearsay, is of the type that can be reasonably relied upon by investigators analyzing fire causation. Her statement, an apparent utterance of an eyewitness to a fire fighter, is only one of a number of factors upon which Frantz relied in determining that a chimney fire had occurred. "[C]hallenges to the admissibility of source materials underlying an expert's opinion go not to the qualifications ... of the witness, but only to the weight to be accorded his or her testimony." *State ex rel.*

*T.R.S. v. L.F.E.,* 125 Wis. 2d 399, 401, 373 N.W.2d 55, 56 (Ct. App. 1985).

■

Finally, it is not appropriate to award a new trial in the interest of justice. "[A] new trial in the interest of justice will be granted only if there has been an apparent miscarriage of justice and it appears that a retrial under optimum circumstances will produce a different result." *Garcia v. State,* 73 Wis. 2d 651, 654, 245 N.W.2d 654, 656 (1976) (quoting *Jones v. State,* 70 Wis. 2d 41, 56, 233 N.W.2d 430, 438 (1975)). Neither a miscarriage of justice nor the likelihood of a different result is present here.

*By the Court.*—Judgment affirmed.